TOWNSHIP COMMITTEE OF THE TOWNSHIP OF KEARNEY, PLAINTIFF IN ERROR, v. JOHN H. BALLANTINE ET AL., DEFENDANTS IN ERROR.

1. In the charter of Kearney township (*Pamph. L.* 1871, *p.* 1371) there is no provision for a review of the award made by the commissioners of assessment for lands taken in the opening of a street.    Consequently, if that award be made without due notice to the landowner, it is illegal.

.2. Under the Bridge act of March 8th, 1888 (*Pamph. L*, p. 158), it was lawful for a township to exert its chartered powers for the opening of a street, in order that it might construct on such street an approach to a county bridge; but the supplement to the Bridge act, approved April 10th, 1889 (*Pamph. L.*, p. 257), provided a uniform method of acquiring the land necessary for the construction of such an approach, and so prescribed the only procedure thereafter to be adopted, when that was the sole end in view.

On error to the Supreme Court.

For the plaintiff in error, *Frederic W. Stevens.*

For the defendants in error, *John R. Emery.*

The opinion of the court was delivered by

DIXON, J.    This writ of error brings up a judgment of the Supreme Court setting aside proceedings taken by the township of Kearney, in the course of which lands of the defendants in error were condemned for the opening of a street.

One of the grounds upon which the Supreme Court based its judgment is, that the award for the lands condemned was made without notice to the owners of any hearing before a tribunal authorized to fix the amount thereof.

The only legislative authority for the proceedings taken is found in the charter of Kearney township, approved April 6th, 1871.    *Pamph. L.*, p. 1371.    This charter provides, in the case of opening a street, that, after the passage of an ordinance for making the improvement and a reference of the matter to the commissioners of assessment, these commissioners shall examine into the whole matter impartially, and shall make a report, called a preliminary report, showing the value of the land to be taken and the damages to be done by taking it, and also showing the commissioners' estimate of the whole cost of the improvement and an assessment of this estimated cost on the property benefited (sections 43, 49); then, unless the owners of a majority of the land so assessed for benefits shall, after due notice, remonstrate against the improvement (section 44), the value and damages awarded for land to be

taken shall be paid or tendered to, or deposited for, the owners, and thereupon the township committee shall proceed to make the improvement (section 50); when the improvement shall have been completed, the commissioners of assessment are to make a second report, called a final report, showing the value of the land taken and the damages done by taking it (section 49), and also showing the actual cost of the improvement and an assessment of this cost upon the property benefited (section 45); this assessment of the cost is, after public notice of the time and place of hearing, to be considered by the township committee (section 45), and, if confirmed by them, becomes a lien upon the land assessed (section 46).

It is evident from these provisions that the amount to be paid for land taken and damages is to be finally ascertained and reported in the first report of the commissioners of assessment; their second report is not to be made until after the improvement is completed, while the landowner is entitled to compensation for his land and damages before the improvement is begun.    It also appears that no authority is given to the township committee to review this first report, their power of consideration being confined to the assessment for benefits stated in the second report.    The commissioners of assessment, therefore, constitute the only tribunal charged by the statute with the duty of fixing the compensation to be paid to the owners of land taken.    This is a judicial duty, and, therefore, although the statute is silent on the subject of notice, it was essential to the legal performance of their functions that the commissioners should have afforded to the landowners a reasonable opportunity of being heard before the tribunal upon the questions involved in its decision.    *State* v. *Jersey City*, 4 *Zab.* 662; *Freeholders of Hudson* v. *Road Commissioners*, 12 *Vroom* 83; *Wilson* v. *Karle*, 13 *Id.* 612; *Davis* v. *Howell*, 18 *Id.* 280.

It is conceded that no such opportunity was given in the proceedings now under review.    Although the township committee gave notice that they would consider objections made to the award of the commissioners, and, after hearing the

landowners, voted to ratify and confirm the same, yet, as the committee was without jurisdiction in the matter, their action was of no avail.

For this reason the award and all subsequent proceedings were illegal.

Another ground taken in the opinion of the Supreme Court for reversing the proceedings of the township is, that since the object of opening the street was only to enable the township to construct an approach to a bridge over the Passaic river between the counties of Essex and Hudson, in accordance with the Bridge act, approved March 8th, 1888 (*Pamph. L., p.* 158), the township charter did not confer the requisite authority. The reasoning adopted by the court is, that under the decision in *Freeholders of Sussex* v. *Strader,* 3 *Harr.* 108, the approach of or to a bridge is part of the bridge itself, and, therefore, is not "a street, road or avenue," to which alone the township charter relates.

This ground we do not deem tenable.

Although the term "bridge" may include the approaches, yet, in the statute of March 8th, 1888, it is not employed with so broad a meaning. That statute requires the counties connected by the bridge to bear the expense of constructing and maintaining "the bridge," and indicates that thereby is intended the structure reaching from one side of the stream to the other, with its proper foundations or abutments, while the expense of constructing and maintaining "the approaches" is imposed upon the towns, townships or municipalities in which they lie, and they are defined to be whatever is "necessary to connect the bridge with the public roads or streets at either end thereof, or to make such roads or streets conform to the grade of the bridge." Plainly, in this law, the bridge and the approach are distinct things.

It is also evident, from the language last quoted, that when the legislature passed this act it contemplated that there should be a street or road at either end of the bridge before the approach was constructed, and yet it did not bind the counties to build the bridge only where its ends would rest on streets

or roads previously existing.  Under these circumstances, it seems reasonable to conclude that the legislature expected the municipalities to use their powers of opening streets and roads, in order that they might be able to construct the approaches, in case there were no street or road already opened at the ends of the bridge.  Such powers were appropriate to the duty imposed, and when these proceedings were taken there was no other adequate authority.

But by a supplement to this Bridge act, which was approved April 10th, 1889, but did not go into effect until July 4th, 1889 (*Pamph. L., p.* 257), another method of acquiring land for the approaches is provided, and this general enactment appears to deal so completely with the matter that it should be regarded as superseding prior special laws having in view the same end, and as prescribing the only procedure to be adopted when the sole purpose is such as it subserves. *Haynes* v. *Cape May*, 23 *Vroom* 180.

Since, therefore, at the date when this supplement became operative, no lawful proceedings had been taken giving the township any vested rights in the land required, and now such rights can be secured only under this supplement, it would be useless and illegal to resume the proceedings under the charter merely to obtain a basis for the construction of the approach.  Consequently, the judgment of the Supreme Court setting aside all the proceedings in question was not erroneous, and should be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DIXON, REED, BOGERT, BROWN, CLEMENT, KRUEGER, SMITH.  9.

*For reversal*—None.