### WILLIAM T. MEREDITH ET AL. v. THE CITY OF PERTH AMBOY.

### MARY E. FRANKLIN v. THE CITY OF PERTH AMBOY.

The act of June 10th, 1895 (*Gen. Stat.,* p. 459), continuing indefinitely, in cities which pass from one class into another, the operation of laws applicable only to their former class, is unconstitutional.

On *certiorari.*

Argued at November Term, 1896, before Justices LUDLOW and DIXON.

For the prosecutors, *Ephraim Cutter.*

For the defendant, *Adrian Lyon.*

The opinion of the court was delivered by

DIXON, J. It is conceded that the ordinance now under review has no legal support outside of a statute approved April 9th 1892, (*Gen. Stat.,* p. 519), which applies only to cities of the third class. The ordinance was passed by the council on April 13th, 1896, and approved by the mayor on April 17th, 1896. No rights had been acquired under it on May 28th, 1896, when the *certiorari* was allowed, nor can it be executed unless the statute above mentioned be in force. On April 15th, 1896, Perth Amboy passed from the third

into the second class of cities, because, by the census of 1895, promulgated January 15th, 1896, the population of the city exceeded twelve thousand. The city relies on the act of June 10th, 1895 (*Gen. Stat., p.* 459), to continue within its borders, after April 15th, the operation of the statute of April 9th, 1892. The act of June 10th provides "that whenever any city has become or shall hereafter become, by reason of its population, a member of another class, * * * the laws theretofore in force applicable to such city shall be deemed to be applicable and to have remained applicable thereto, except so far only as the governing body thereof, by ordinance, shall declare or have declared otherwise, or shall in some other manner have manifested an intention to be subject to the laws of the other class; all laws passed subsequently to the promulgation of the census which shows that a city contains such a population as will change its classification, shall be applicable to such city as a member of the class to which it shall then belong, except where repugnant to any law or laws in force in said city under its old classification, and not by ordinance or official action as aforesaid declared inapplicable."

The meaning of this act seems to be that, as each city passes from one class to another, its governing body may select, from the laws then applicable to its former class and those then applicable to its present class, such as it may desire, and the laws so selected, with consistent statutes subsequently passed, are to constitute the body of laws controlling the city. Inasmuch as the laws applicable to the several classes of cities are altered annually, it is evident that the option thus offered to one city is not offered in precisely the same form to any other city, although of the same population, unless it happens to make its transit across the line of classification during the same legislative interval, nor is it offered at all to cities of the same population which remain in the same class. The act attempts to divide cities, not on the basis of population merely, but on the change of population past a fixed number, and in such a way that the powers proffered to the cities will differ according to the time at

which such change takes place.   Among cities of similar population, the fact that one has attained its present size by passing a designated limit since the Classification act was approved, while another has not, and the fact that one passed that limit in one year and another in another year, can afford no natural or rational basis for a difference in their statutory powers, and therefore we think those facts cannot be employed by the legislature for the purpose of creating any diversity in the laws by which the internal affairs of the cities are to be regulated.   If the legislature should enact, in terms, that some cities might choose the laws to govern them among the statutes A, B and C, and other cities of the same character might choose among the statutes B, C and D, and still others of the same character might choose among the statutes C, D and E, the special nature of such legislation would be manifest.   But that would not differ in substance from the enactment now under consideration.

We are constrained to the opinion that this act transgresses the constitutional provision against special laws for regulating the internal affairs of towns, and is therefore invalid.

We do not doubt that some peculiar legislation is necessary to enable municipalities passing from one class to another to adjust their local machinery to their new condition without serious embarrassment, and laws applicable to them alone and confined to that object would be constitutional, but the legislature cannot, under the guise of that design, make special provision for their permanent government.

Our conclusion is that as Perth Amboy became a city of the second class on April 15th, 1896, the act of April 9th, 1892, then ceased to be operative within it, and consequently the ordinance now before us is incapable of enforcement.   It should therefore be set aside.   *Township of Kearney* v. *Ballantine*, 25 *Vroom* 194, 198.

The prosecutors are entitled to costs.