# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### JUNE TERM, 1907.

---

THE MAYOR AND COUNCIL OF THE BOROUGH OF METUCHEN, appellant,

*v.*

THE PENNSYLVANIA RAILROAD COMPANY et al., respondents.

[Argued June 25th and 26th, 1907. Decided April 16th, 1908.]

1. The twenty-ninth section of the Railroad law of 1903 (*P. L. 1903 p. 645*) confers upon the court of chancery power to compel a railroad company to widen a highway crossing constructed by it under its right of way, when such crossing is so narrow as to impede public travel upon the highway.

2. The charter of a railroad company provided that it should be the duty of the company to construct and keep in repair good and sufficient

bridges or passages over or under its railroad where any public road should cross the same, so that the passage of carriages, horses and cattle should not be impeded thereby.—*Held,* that such charter provision empowered the company to substitute an undergrade passageway in the place of a highway crossing at grade, when the public travel along the highway had increased to such an extent that the abandonment of the grade crossing was required for the public safety.—*Held further,* that such charter provision did not require the undergrade passage to be constructed to the full width of the highway unless that width was required for the accommodation of public travel at the place of its location.—*Held further,* that such charter provision imposed upon the company the duty of keeping in repair the surface of the passageway as constructed by it.

3. A railroad company which constructs a passageway under its railroad, at a highway crossing, in pursuance of such a charter provision, is charged with the duty of preventing the accumulation of surface water therein in such quantity as to interfere with the user of the passageway by the public.

On appeal of the Pennsylvania Railroad Company, and cross-appeal of the borough of Metuchen from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *71 N. J. Eq.* (*1 Buch.*) *404.*

*Mr. Alan H. Strong,* for the companies.

*Mr. Charles L. Corbin* and *Mr. George S. Silzer,* for the borough.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

Prior to the year 1889 the railroad of the Pennsylvania Railroad Company, lessee of the United New Jersey Railroad and Canal Company, crossed Main street in the borough of Metuchen at grade. For the better safeguarding of the public using this highway this grade crossing was, in the year mentioned, abolished by the lowering of the grade of Main street on each side of the railroad tracks, and the construction by the railroad company of a passageway under its railroad, connecting at each end with Main street at the lowered grade thereof. The width of Main

street before this change was made was, and it still continues to be, sixty-six feet. The passageway under the railroad was constructed at a width of forty-five feet, consisting of a roadway twenty-five feet wide, paved with Belgian block, and a sidewalk ten feet in width on each side thereof. The railroad, where it crossed over the passageway was supported by iron columns which stood on the edge of either sidewalk, and the abutments and retaining walls of the embankment were on the exterior lines thereof. The drainage of the company's right of way to the east of this crossing point, for nearly a half mile, is toward the crossing, and for the purpose of taking care of the surface water which should flow into the passageway therefrom, the company built a receiving basin and laid a drain pipe from it to connect with a brook about one thousand feet to the west. The drain pipe, although when originally constructed it carried off the water which came into the passageway in times of heavy rain, fails to do so at the present time, probably on account of some stoppage in the pipes, so that now the passageway is flooded during such periods to a sufficient extent to practically block traffic. In addition, the Belgian block pavement of the roadway in the passage has become so uneven and out of repair as to make travel over it dangerous. The bill in this case is filed by the borough to compel the defendant (1) to remove the pillars and abutments supporting its railroad from their present location, and to widen the passageway to the full width of Main street; (2) to reconstruct its drainage system in such a way that the water from its right of way shall no longer be discharged into the passageway in such quantity as to accumulate there and flood it, and (3) to put the pavement of the roadway in the underground passage in proper repair. Upon the hearing in the court of chancery it was decreed that the complainants were entitled to the relief sought, so far as the widening of the passageway to sixty-six feet and the reconstruction of the defendant's drainage system were concerned, but that the defendant was not charged with the duty of repairing the pavement of the roadway. The defendant company appeals from so much of the decree as grants the complainants the relief stated, and the complainants

appeal from that part of the decree which refuses them relief with regard to the repair of the roadway.

Taking up for consideration first the appeal of the railroad company, it is contended by it that the court of chancery has no jurisdiction over the subject-matter of the litigation. The same contention was made in the court of chancery, and it was there considered untenable. The grounds which led the learned vice-chancellor to the conclusion that the matters involved in the litigation were cognizable in the court of chancery are fully set out in his opinion, and we concur in the views expressed by him upon this point and in his conclusion. Upon the merits the Pennsylvania Railroad Company rested its defence against the claim that it should be compelled to remove its pillars and abutments and open up the passageway to the full width of Main street, upon two statutory provisions. The first is contained in an act entitled "An act relative to the Delaware and Raritan Canal Company, the Camden and Amboy Railroad and Transportation Company, and the New Jersey Railroad and Transportation Company," the three companies which were afterward consolidated into the United New Jersey Railroad and Canal Company (*P. L. 1868 p. 1037*), which authorized these companies to shorten and straighten any part of their railroad lines, and to cause the same to pass above or below any public highway or street crossing the same, and, if necessary, to change the location or grade of such highway or street so as to make the crossing more convenient, provided such change is concurred in by the common council of the city or borough, or a majority of the surveyors of the highway of any township, in which such change may be made. The second of these statutory provisions is contained in the charter of the New Jersey Railroad and Transportation Company, one of the constituent companies of the United New Jersey Railroad and Canal Company, and the original owner of this railroad, and is as follows:

"Section 20. It shall be the duty of the said company to construct and to keep in repair good and sufficient bridges or passages over or under said railroad or roads where any public or other road shall cross the same, so that the passage of carriages, horses and cattle on said road shall not be impeded thereby." *P. L. 1832 p. 104.*

We agree with the conclusion expressed by the vice-chancellor that, under the facts proved before him, and which are fully set out in his opinion, the first of these statutory provisions affords no protection to the defendant company against the claim of the complainants, and for reasons stated by him. But the conclusion reached by him that the charter provision above recited did not authorize the defendant company to carry Main street under its railroad through a passage narrower than the full width of the street, and affords no justification for the maintaining of the passage at its present width is, we think, unsound. It may very well be that when a railroad company builds its railroad over an existing public road, so high above the level thereof as not to interfere with public travel thereon, such a charter provision as that appealed to confers upon it no right to encroach upon the limits of such road with its abutments, or with supports for its tracks; but when the tracks of a railroad company have been laid across a public highway at grade, and increasing travel eventually requires the abandoning of the grade crossing for the better conserving of the safety of those using the highway, the right of the company under such a charter provision to construct a passageway under its railroad, as it then exists, of sufficient width and height to accommodate public travel, instead of lowering the grade of the highway and carrying it in its full width under the railroad, is clear, for the imposition of the duty carries with it the power to perform that duty in exact accordance with its prescriptions. This, as we understand its opinion, was the view expressed by the supreme court in the case of *Central Railroad Co. v. State, 32 N. J. Law (3 Vr.) 220,* and the soundness of that view has never since been questioned in any of our judicial decisions. The duty imposed is: "To provide a substitute for that which is necessarily and lawfully taken away, and the law requires no more than that such substitute shall be sufficient to accommodate public travel at its location." *Township of Raritan v. Port Reading Railroad Co., 49 N. J. Eq. (4 Dick.) 11.* No attempt was made on the part of the complainants to show that when the grade crossing was abolished in 1889, the passageway then constructed by the rail-

road company under its railroad was not amply sufficient to accommodate public travel; that it was not so constructed that, in the language of the charter provision, the passage of carriages, horses and cattle on said road would not be impeded thereby. We conclude, therefore, that at that time the construction now complained of was fully authorized by the charter provision referred to.

But the duty resting upon the defendant company of constructing and maintaining a good and sufficient passage under its railroad at its intersection with Main street is a continuing one, and as that passage was not originally made of equal capacity with the highway, it must, from time to time, be enlarged by the company as public accommodation demands, until it shall reach the full capacity of the highway (*Central Railroad Co.* v. *State, supra; Township of Raritan* v. *Port Reading Railroad Co., supra*), and it was considered by the vice-chancellor, and is contended here on behalf of the borough, that the public travel upon Main street, at the present time, is of such volume as to require this passageway to be enlarged to the full width of the street. The only testimony upon that subject was given by one Eagan, who stated that, at the request of the mayor of the borough, he had, upon a certain day during the hearing of the cause, counted the number of persons and vehicles passing under the crossing between six o'clock in the morning and seven o'clock in the evening, and that the number of foot passengers during the thirteen hours was fourteen hundred and fifty-nine; the number of vehicles, exclusive of trolley cars (there is a single-track trolley road running through Main street), was three hundred and ninety-four, and the number of trolley cars, four each hour. The case shows that the defendant company's railroad station is located adjacent to this crossing, and it is fair to assume that the volume of travel through the passage is much heavier at the time of the arrival and departure of trains than at other times, and that it is not evenly distributed through the day at the rate of a vehicle every two minutes, and a foot passenger every half minute. But even with this assumption we are not able to perceive any ground for sustaining the conclusion that a roadway,

twenty-five feet wide, ample for the accommodation of three wagons abreast, with two sidewalks each ten feet wide, is not fully sufficient for the accommodation of the travel at this point. When we remember that the roadway of Wall street in the city of New York, one of the busiest thoroughfares in the world, is only twenty-four feet in width at its broadest point, viz., its junction with Broadway, and that the roadway of Chestnut street, the most important street in Philadelphia, a city of over a million inhabitants, is only twenty-six feet wide at its intersection with Broad street, the point of greatest traffic in all that immense city, we feel quite safe in saying that a roadway of practically the same width as that of those two great thoroughfares, supplemented by two sidewalks each ten feet wide, is fully adequate to meet the requirements of the borough of Metuchen, with its population of nineteen hundred and seven (according to the state census of 1905) and of its vicinity. So much of the decree as requires the removal of the defendant company's abutments and embankments, and the opening of the passageway to the width of Main street, must be reversed.

The portion of the decree which compels the defendant company to so reconstruct its drainage system that the water from its right of way shall not be discharged upon the street, and into the passageway, in such quantities as to interfere with public travel, we think should be affirmed, and for the reasons stated in the opinion of the learned vice-chancellor.

Turning, now, to that portion of the decree appealed from by the borough, viz., the refusal to compel the defendant company to keep in repair the surface of the roadway under its right of way. We cannot concur in the view expressed by the vice-chancellor that this duty of repair rests upon the borough authorities and not upon the defendant company. We have pointed out that what was done in 1889 was not the depressing of the grade of Main street at the point of its intersection with the company's railroad, and the carrying of the street under the railroad at the altered grade, but the substitution by the defendant company, at that point, of a public way or passage under its railroad in the place thereof, and that this substitution was

authorized by the power conferred upon the company by the twentieth section of the charter of the New Jersey Railroad and Transportation Company. This provision apparently leaves the size of the passage and the character of its construction to be determined by the judgment of the railroad company, with the single limitation that it shall fully accommodate public travel. The railroad company, in the present instance, elected to construct a passage with a Belgian block pavement upon the roadway thereof, and this pavement constituted an integral part of that passage. The charter provision of which the defendant company has availed itself requires the company "to keep in repair" such passages as it shall construct under its railroad, and that duty covers every part of such passageway. So much of the decree as relieves the defendant from the performance of that duty must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, BOGERT, VREDENBURGH, GRAY, DILL—12.