THE COUNTY OF HUDSON, PROSECUTOR, v. BOARD OF
PUBLIC UTILITY COMMISSIONERS, EMMITT T. DREW,
SECRETARY, BOARD OF PUBLIC UTILITY COMMIS-
SIONERS, ERIE RAILROAD COMPANY ET AL., RE-
SPONDENTS.

Submitted May 2, 1939—Decided October 2, 1939.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutor, *J. Emil Walscheid.*

For the Erie Railroad, Charles E. Denny and John A.
Haddon, trustees, and New York and Greenwood Lake Rail-
way Company, *Collins & Corbin (Edward A. Markley* and
*Charles W. Broadhurst).*

For the Board of Public Utility Commissioners, *John A.
Bernhard.*

BODINE, J. This writ of *certiorari* brings up for review
a decision by the Board of Public Utility Commissioners
holding that a highway as diverted by the Erie Railroad
Company and the New York and Greenwood Lake Railway
Company, under state direction, was not such an underpass
as the railroads were obligated to keep in repair within the
meaning of section 26 of the Railroad act. *R. S.* 48:12-49.

The county of Hudson has under its control in the town
of Kearny a county road designated as Passaic avenue, which
road is crossed by the Erie Railroad at or near the West
Arlington station by means of an overhead bridge. The right
of way is owned by the New York and Greenwood Lake Rail-

road Company. The bridge was constructed for the purpose of carrying the railroad over Passaic avenue, which was depressed in order to carry the avenue under the bridge. Passaic avenue was, in part, relocated to effect this change.

The petition filed by the county with the board alleged that it was the duty of the railroad to keep the highway underpass in good and sufficient repair. It further alleged that the underpass had not been constructed in the proper manner and had not been kept in repair, specifying that the fill from the embankment had been carried down into the traveled portion of the highway. The embankment is eroded and washed out. Drainage facilities are inadequate, so that the ramp leading up to the highway on the other side of the railroad known as Midland avenue is being undermined.

In 1930, proceedings were instituted under the Fielder Grade Crossing law (*Pamph. L.* 1930, *ch.* 101, *p.* 347), *R. S.* 48:12-61, whereby it was ordered that the Erie Railroad Company alter its Passaic avenue crossing by changing the lines of the street and by carrying so much of the highway so changed under the railroad, according to plan submitted, and by relocating the railroad and highway so as to conform with plans adopted. Fifty per cent. of the cost of the elimination of the grade crossing was borne by the state and the balance by the railroad company. An underpass for the highway was built in a descending curve at a depth of approximately fifteen feet and an upward curve to rejoin the highway on grade on the other side. The railroad right of way was carried over the underpass by means of a bridge. By 1937, the underpass became out of repair and unsafe for travel. Hence, the institution of the proceedings under review.

The testimony and exhibits offered before the commissioners indicated that the underpass was very much out of repair. The commissioners found that there was no duty as a matter of law imposed upon the railroad to make the required repairs. A rehearing was granted at which time the respondents noted upon their answer that Messrs. Denny and Haddon had been appointed trustees for the railroad company in proceedings in bankruptcy under section 77-b of the United States statutes and the record was so amended. The same

decision was, however, reached at the rehearing. There was error in this because while the railroad was under no duty to repair county roads however relocated for its convenience or that of the traveling public it was under a duty to repair the underpass under its right of way. *Metuchen* v. *Pennsylvania Railroad,* 73 *N. J. Eq.* 359.

Section 26 of the General Railroad law (*Pamph. L.* 1903, *ch.* 257, ¶ 26, now *R. S.* 1937, 48:12-49), provides that: "Every railroad company owning, leasing or controlling any right of way over a railroad within this state *shall* construct and *keep in repair,* good and sufficient bridges and *passages,* over, *under* and across the *railroad or right of way* * * * *so that public travel on the road is not impeded thereby* * * *."* This statute imposes a duty to keep in good and sufficient repair passages under the railroad right of way to the end that public travel on the highway may not be impeded.

The Fielder Grade Crossing law is a supplement to the Public Utility act. As this statute reads in 1930 (*Pamph. L.* 1930, *ch.* 101, *p.* 347), it provided that: "Whenever a public highway * * * and the tracks of a railroad * * * cross each other at the same level and it shall appear to the Board that such crossing is * * * dangerous to public safety or that the public travel on such highway is impeded thereby, the Board * * * may order the company * * * operating such railroad * * * to alter such crossing * * * according to plans to be approved by such Board, by substituting therefor a crossing not at the grade of such public highway; * * * by carrying such public highway under * * * such railroad; or by vacating, relocating or changing the lines, width, direction, or location of such highway and the opening of a new highway in the place of the one ordered vacated." Under this statute the utility board acted in eliminating the grade crossing in question. There is an evident legislative policy to protect public travel. *State* v. *Biggs,* 117 *N. J. L.* 240; *Bronstein & Co.* v. *Hoffman,* 117 *Id.* 500; *Jersey City* v. *State Water Policy,* 118 *Id.* 72; *Public Service Electric and Gas Co.* v. *City of Camden,* 118 *Id.* 245; *Group No. 23 of Association of the Sons of Poland,* 121 *N. J. Eq.* 102.

The board has the power under the statutes cited to require the repair of an underpass when necessary for the safety of the traveling public. *Erie Railroad* v. *Board of Public Utility Commissioners,* 107 *N. J. L.* 409.

In the present case the county road was relocated for a distance of at least one thousand one hundred feet. Such relocation was not an underpass in fact or as contemplated by the legislative enactment. The railroad obligation, we think, was confined to the repair of the passage under its right of way.

The decision of the board must be set aside to the extent that it must require the repair of the underpass within the bounds of the railroad right of way.