The County of Bergen appeals an order of the Board of Public Utility Commissioners limiting the defendant railroad's responsibility to maintain and repair the Main Street-De Graw Avenue bridge in the Borough of Bogota to that portion within the limits of its right of way.
On November 8, 1948, the County of Bergen applied to the Board for an order requiring defendant railroad companies to make necessary repairs to the bridge in question, as well as to the approaches thereto.
The bridge extends over the railroad's right of way and a parallel highway known as Leona Avenue and is a part of a county highway and, after considerable litigation, was originally constructed pursuant to an order of the Board issued under the authority of R.S. 48:12-61 et seq., known as the "Fielder Grade Crossing Act."
The sole issue before the Board was the question of the railroad's responsibility to repair and maintain the bridge. The parties were in substantial agreement that portions of the bridge were in a state of disrepair. The Board took the position that its powers were defined and limited by R.S. 48:12-49 as construed by the court in Hudson County v. Board of PublicUtility Commissioners, 123 N.J.L. 204 (Sup. Ct. 1939); affirmed, 124 N.J.L. 563 (E. A. 1940).
Plaintiff contends that, under R.S. 48:12-49, the railroad's duty to maintain and repair the bridge includes the approaches *Page 187 
to the span as well as the portion of the span over the right of way; that the term "bridges" has long been held to include the approaches and, therefore, where a statute imposes the duty of keeping a "bridge" in repair, it comprehends the duty of keeping the approaches in repair; that the Board of Public Utility Commissioners has broad powers of supervision and regulation under Chapter 2 of Title 48 (R.S. 48:2-1 to R.S. 48:2-52) which contemplate the same measure of control over "Fielder Act" grade crossings as over other railroad problems; that its jurisdiction is not limited or qualified by the "Fielder" Act" and a failure to take jurisdiction over the bridge approaches is equivalent to an abandonment of the public interest in them.
Defendant railroad contends that its responsibility to maintain and repair the bridge in question is limited to that portion which spans its right of way, and was so determined in the case of Hudson County v. Board of Public Utility Commissioners,supra; that plaintiff's contention that the term "bridges" has, under all circumstances, been held to include the approaches is erroneous, citing in support thereof Ballantine v. Board ofTownship Committee of Township of Kearny, 52 N.J.L. 338 (Sup.Ct. 1890); affirmed, Township Committee of Kearny Township v.Ballantine, 54 N.J.L. 194 (E. A. 1891).
To ascertain the legislative intent as to the responsibility of railroads for maintenance and repair of structures under the "Fielder Act," a review of the legislative history of the "Fielder Act" and statutes in pari materia is illuminating. In Section 2 of the original "Fielder Act," P.L. 1913, c. 57 (R.S. 48:12-61 et seq.), railroads were required to bear the entire cost of grade crossing eliminations, except that street railways using the crossing altered or eliminated could be required to bear up to 10% of the cost thereof. The Legislature, in 1930 (P.L. 1930, c. 101, § 2), obviously recognizing the State's obligation, provided that: "The entire expense * * * shall be paid fifty per centum by such railroad company, or companies, involved and fifty per centum by said board out of funds to be provided for that purpose." Simultaneously, *Page 188 
another act was passed by the Legislature (P.L. 1930, c.
102). Section 1 thereof provided that $2,000,000 per annum of the motor fuel tax receipts were to be paid to the Board of Public Utility Commissioners "* * * to be used by it to defray the public share of the cost of eliminating grade crossings * * *." This act provided that any money so appropriated should not lapse, but remain available for carrying out the purposes of the act until expended. This statute also provided that no moneys should be paid to the Board for elimination projects in any year in which funds for such purposes were available in the "Grade Crossing Elimination Fund" provided for in another statute then pending before the 1930 session of the Legislature. The statute referred to was subsequently adopted and became Chapter 228, ofP.L. 1930 (now R.S. 27:11-9 (1) et seq., Acts Saved From Repeal). It provided for a bond issue of eighty-three million dollars to be used, in part, "to pay the public share of the cost of eliminating grade crossings on highways other than state highways." This bond issue was approved at the November, 1930, election. Under Section 2, P.L. 1933, c. 390 (R.S.
48:12-62), the Public Utility Act was amended to permit federal allotments to be credited "* * * toward the part of the expense to be borne by such railroad company, or companies." In 1947,R.S. 48:12-62 was amended to increase the State's share of the cost of construction for grade crossing eliminations to 85%.P.L. 1929, c. 88, § 3 (R.S. 48:12-70), applying to crossings at state highways, provides that the expense is to be borne in equal shares by the State and the railroad. P.L. 1947,c. 178, § 3, reduced the railroad's share to 15%.
It is significant that the "Fielder Act," R.S. 48:12-61 to 67 inclusive, omits any reference to the maintenance of the completed structures. The "Fielder Act" was a part of the legislative policy of eliminating grade crossings in the interest of public safety. In the instant case, the railroad was required to contribute only 5% of the cost of the structure. The clearly defined legislative policy, as revealed by the pertinent statutes heretofore discussed, indicates a recognition of the *Page 189 
State's responsibility to assume an ever increasing proportion of the cost of grade crossing eliminations, and is persuasive proof that the Legislature did not intend that railroads should be under a duty to repair and maintain the entire structure completed under the "Fielder Act." The omission in the "Fielder Act" of any reference to maintenance is additional proof of the legislative intent not to impose this duty upon the railroad, except for the portion of the structure within the limits of the railroad's right of way.
Plaintiff argues that a railroad's liability under the statutes for maintenance and repair of crossing structures arises fromR.S. 48:12-49, the General Railroad Act. However, that argument completely ignores the interpretation of the "Fielder Act," under which the bridge was constructed, in the case of Hudson Countyv. Board of Public Utility Commissioners, supra, holding that the railroad's duty to repair does not extend beyond the limits of its right of way. In City of Chicago v. Pittsburgh, Ft. W. C.R. Co., 247 Ill. 319, 93 N.E. 307, Justice Carter speaking for the Supreme Court of Illinois in discussing the liability for maintenance and repair of railroad bridge approaches, said:
"The railroad must keep and maintain its crossings so that they will continue to meet the needs and requirements of an increasing population in respect to the safety of persons and property.Northern Pacific Railway Co. v. [State of Minnesota ex rel.City of] Duluth, 208 U.S. 583, 28 Sup. Ct. 341,52 L.Ed. 630. But this does not necessarily require the railroad to keep and maintain that which is for every practical purpose a street or highway, even though incidentally it is used as a part of the ascent or approach to reach the viaduct. * * *"
Prior to the construction of the bridge, Fort Lee Road crossed the railroad tracks at grade. To eliminate this grade crossing, "Fielder Act" proceedings were instituted, resulting in the Board's directive requiring an overhead structure located some six hundred feet north of Fort Lee Road, at Main Street. Prior to the completion of the span, Main Street did not cross the railroad's right of way, which at that point was located in a ravine. The grade elimination project extended *Page 190 
for a distance of approximately twelve hundred feet, traversing not only the railroad's right of way (one hundred and twenty-five feet in width) but Leona Avenue, a street running parallel to the railroad to the east of the right of way and extending for a distance of one block to the west of the right of way. To compel the railroad to maintain and repair the entire structure would in this case impose upon it a duty which we are convinced was not contemplated by the Legislature in its enactment of the "Fielder Grade Crossing Act" (R.S. 48:12-61 et seq.).
In Hudson County v. Board of Public Utility Commissioners,supra, analogous to the case sub judice, the court specifically considered the obligation of a railroad to maintain and repair a structure constructed under the "Fielder Act." Mr. Justice Bodine, speaking for the Supreme Court, said, 123 N.J.L. at page 206:
"* * * while the railroad was under no duty to repair county roads however relocated for its convenience or that of the traveling public it was under a duty to repair the underpass under its right of way. [Mayor, etc., of Borough of] Metuchenv. Pennsylvania Railroad [Co.], 73 N.J. Eq. 359."
Mr. Justice Bodine stated further that:
"* * * This statute (R.S. 48:12-49) imposes a duty to keep in good and sufficient repair passages under the railroad right of way to the end that public travel on the highway may not be impeded. * * *
"In the present case the county road was relocated for a distance of at least one thousand one hundred feet. Such relocation was not an underpass in fact or as contemplated by the legislative enactment. The railroad obligation, we think, was confined to the repair of the passage under its right of way." (Parenthesis ours.)
The order of the Board of Public Utility Commissioners is affirmed, without costs. *Page 191