THE STATE, JOHN H. BALLANTINE, PROSECUTOR, v. THE BOARD OF TOWNSHIP COMMITTEE OF THE TOWNSHIP OF KEARNY ET AL., DEFENDANTS.

A municipality, under its power to open streets, may not condemn lands upon which to construct the approach to a bridge erected by distinct legislative authority.

On *certiorari*.

Argued at November Term, 1889, before Justices VAN SYCKEL, MAGIE and GARRISON.

For the prosecutor, *J. R. Emery.*

For the defendants, *F. W. Stevens.*

The opinion of the court was delivered by

GARRISON, J. The controlling question in this case is, whether a municipality, under its power to condemn lands to open streets, may take lands for other purposes. The facts upon which this question has arisen are these: An act of the legislature, passed March 8th, 1888, authorized the construction of bridges, and the approaches thereto, over navigable streams which divide counties. *Pamph. L.* 1888, *p.* 158. Under the authority thus conferred, the chosen freeholders of Essex and Hudson counties began the construction of a bridge over the Passaic river, the approach to which, in the county of Hudson, is located upon the dock property of the prosecutor. The approach in question leaves the abutments of the bridge at a height of ten feet above the level of the dock, descending gradually across the whole of the prosecutor's property until it reaches grade at Passaic avenue, a street of said township of Kearny, which is an incorporated municipality of this state. The act makes it the duty of the township to construct the said approach to the bridge, but confers no power to acquire lands by condemnation. Under these circumstances the municipality proposes, by the proceedings now before us, to condemn the lands of the prosecutor necessary for the said approach as if it were a street. There is no dispute that prosecutor's lands are sought solely for the purpose of constructing the approach to the bridge. The authority thus attempted to be exercised, is that conferred upon the township of Kearny by its charter (*Pamph. L.* 1871, *p.* 1389, § 47), where, under the head of "Street Improvements," this language is used: "They [the board of township committee] shall have power to take any lands that may be necessary for open-

ing, widening or altering of any street or road in said township."

Upon a comparison of the charters of municipalities quite generally throughout the state, it will be found that this is the language ordinarily employed in conferring authority upon these bodies to regulate and improve the highway departments of their respective localities. The power thus. granted is such only as is ancillary to the duty which a corporation assumes towards its own denizens and the public generally, of rendering travel within its limits safe, convenient and attractive. The words "streets and roads" are not terms about the ordinary meaning of which any confusion can arise. It is in this ordinary sense that the legislature has here employed them. That the words thus employed do not include the approaches to a bridge, is the subject of a direct adjudication by this court. *Freeholders of Sussex* v. *Strader,.* 3 *Harr.* 108.

In the act under consideration, the approaches to a bridge are clearly regarded as appurtenant structures, requiring the same distinct legislative authority for their construction as the bridge itself. The building of such structures not being within the legitimate exercise of the powers conferred upon a municipality for the internal improvements of its highways, it follows, that no authority to condemn lands for such a purpose can be derived from the language of its charter.

Another and equally cogent view is, that the act referred to is a general act upon the subject of certain bridges and their approaches, and hence operates to repeal all prior inconsistent legislation. By this act, it is provided that the approaches to such bridges shall be constructed at the expense of the municipality in which they lie, the money to be raised by taxation, or by the issue of the bonds of such municipality. The scheme thus disclosed is so radically inconsistent with the method of assessing benefits and awarding damages pursued in the present case under the defendant's charter, that the repeal of the earlier enactment would follow by necessary implication, even if the later act did not specifically repeal "all acts and parts

·of acts inconsistent with its provisions." *Mayor of New Brunswick* v. *Williamson,* 15 *Vroom* 165.

There are grounds other than these upon which, from inherent defects, these proceedings must fall. The attempt to ·assess benefits against the prosecutor for having his dock cut in two by an embankment, is a fair illustration of the disregard of correct legal principles which vitiates proceedings of this kind. If the notion was, that proximity to the bridge would confer benefits upon the prosecutor, that being a general, and not a special, benefit, cannot be considered.

· Moreover, the award of damages in this case was not legally made. The proceeding adopted did not insure, or even permit, to the party whose lands were to be taken from him by ·compulsory purchase, "the rights and privileges usually deemed ·essential to a judicial investigation." *Mulligan* v. *Perth Amboy, ante, p.* 132.

The proceedings for opening Bishop street through the lands of the prosecutor will be set aside, and the parties relegated to the supplement to the Bridge act of 1888, which became a law on April 10th, 1889 (*Pamph. L., p.* 152), where .a distinct method is provided for acquiring lands upon which to construct approaches to bridges erected under' the original .act.