JAMES McKIBBAN v. THE DES MOINES INSURANCE COMPANY, Appellant.

Fire Insurance Policy: APPLICATIONS: *Subsequent policies.* Where two policies were issued on written applications therefor—one on a barn and personalty, and the other on a house and personalty—and, on request of one making a loan to the insured, the polices are cancelled as to the house and barn and a new policy written insuring the house and barn alone without new application, the new policy is so based and the applications given for the partially cancelled policies, that insured is bound by representations made in said original applications and cannot say he made none to get the last policy because he made no application for it.

MISREPRESENTATIONS: *Knowledge of agent.* Where the applicant for fire insurance informed the agent of existing incumbrances on the property to the extent of about $2,600, and the agent knew of the applicant's intention to procure a loan of $2,000, and apply it on the incumbrances, a statement in the application, written by the agent, and signed by the applicant, that the incumbrances amounted only to $2,000, will not be deemed a misrepresentation.

INCUMBRANCES: *Partly paid mortgage.* Where an insured procured a loan on the insured property, with the proceeds of which he paid off incumbrances existing at the time the policy

was issued, and later placed an additional mortgage on the property, aggregating $3,230, the property will not be deemed to have been encumbered for more than $3,000, within the terms of the policy, $400 of the mortgage having been paid before the loss occurred.

Furnishing proof of loss: *Computation of time.* Under Code, paragraph 23, section 48, providing that in computing time, if the last day falls on Sunday, the prescribed time shall be extended so as to include the whole of the following Monday, a proof of loss mailed on Saturday, the last day for making the same being Sunday, and received by the insurance company on Monday, was in time.

*Appeal from Madison District Court.*—Hon. A. W. Wilkinson, Judge.

WEDNESDAY, MAY 15, 1901.

Action in equity to require the defendant to credit $800 claimed to be due to the plaintiff on a policy of insurance against a loss by fire issued to him by the defendant on a bond and mortgage executed by the plaintiff, now owned by the defendant. The defendant answered, setting up certain defenses to plaintiff's right to recover on the policy, and, by way of counterclaim asks judgment and foreclosure on said bond and mortgage. The court found in favor of the plaintiff on his policy in the sum of $845.75, and in favor of the defendant on its counterclaim in the sum of $1,968, and $51.22 attorney's fees, and $2.25 costs of abstract, and rendered judgment and decree of foreclosure in favor of the defendant for the balance. The defendant appeals.—*Affirmed.*

*Read & Read* for appellant

*Dabney & Cooper* for appellee.

Given, C. J.—I.    There is no question but that, if the plaintiff is entitled to recover on the policy sued on, he should have the amount credited on the bond set up in the counterclaim. Neither is it questioned but that the defend-

ant is entitled to judgment and foreclosure on its counter-claim.   The contentions are solely as to the plaintiff's right to recover on his policy.   The policies and applications to be noticed are in the usual form, and contain the usual warranties.   There are but few questions to be considered, yet the facts are somewhat numerous and complicated, but the following, we think, will be sufficient for the purpose of the case:   The plaintiff was the owner of a farm of 153 acres, with a house and barn thereon.   About July 26, 1896, he made two applications, through Mr. Tiderick, a soliciting agent of the defendant, for two policies of insurance,—one on the house and certain personal property, and the other on the barn and certain other personal property,—stating in these applications that the property was incumbered by a mortgage for $2,000, due in five years. The applications were made out by Mr. Tiderick, and, when signed, were forwarded, and two policies were issued thereon by the defendant August 6, 1896.   At the time the applications were made, there were two mortgages on the property, aggregating $2,260.   Plaintiff had applied to the Northwestern Mutual Life Insurance Company for a loan of $2,300 for the purpose of paying off these mortgages, and had been informed by that company that a loan of $2,000 would be made to him.   These facts were known to Mr. Tiderick at the time he made out the applications.   The Northwestern Mutual Life Insurance Company made a loan of $1,800 to the plaintiff, taking said bond and mortgage, dated August 5, 1896, which it since sold and assigned to the defendant.   In obedience to the requirement of said company, and at the request of the plaintiff, the defendant canceled said house and barn out of said policies, leaving the policies on the personal property only; and in lieu thereof, on the 9th day of September, 1896, issued to the plaintiff, without any further application, the policy sued upon, he paying in full the premium.   Said existing mortgages were paid with the money derived from said loan and otherwise, and fully satisfied.   On August 15, 1896, the plaintiff gave a mortgage on the property to one Shriver for $1,315, and

on April 21, 1897, another for $515, both of which were afterwards renewed,—one for $1,337.50, and the other for $537.50. On the 8th day of December, 1897, said barn and its contents were totally destroyed by fire, and the loss of the personal property was subsequently settled for in full. As to these facts there is no dispute. Other facts will appear in connection with the discussion of the questions to be considered.

II. The defenses pleaded against recovery on the policy are, in substance, these: (1) Misrepresentations in the applications as to the amount of incumbrance on the insured property. (2) Incumbering the property in excess of the amount stated in the applications and allowed in the policy, without the knowledge or consent of the defendant. (3) That plaintiff procured the policy sued upon by concealing the fact of the incumbrances that rendered said former policies void. (4) That plaintiff did not furnish proofs of loss within 60 days, as required by the policy. To these defenses the plaintiff joins issue, as will appear further on. Plaintiff's first contention is that, as no new application was made for the policy in suit, no representations were made by the insured to obtain it. Surely, both parties understood that the policy in suit was issued in place of the two former policies, so far as they applied to the real estate, to meet the demand of the company making the $1,800 loan, and that this policy was issued in reliance upon the representation made in those applications. Plaintiff cites *Ames v. Insurance Co.*, 14 N. Y. 253, but an examination of the case will show such material differences in the facts as that it is not authority in this case. We are in no doubt but that these applications should be considered as the basis upon which the policy in suit was issued.

III. Did plaintiff misrepresent as to the amount of incumbrance at the time the applications were made? The exact amount of existing incumbrance was not known to either the plaintiff or Mr. Tidrick, but was understood by both to be about $2,600, and they both knew of the plaintiff's purpose to borrow $2,000 from the

Northwestern Mutual Life Insurance Company to apply on the existing incumbrance. We think it fairly appears that the plaintiff intended and understood that the amount of incumbrance was stated as $3,000, and that Mr. Tidrick, confusing it with the amount of the contemplated loan, erroneously wrote it as $2,000. We conclude there was no misrepresentation, at the time the applications were made, as to the amount of the incumbrance.

IV.   Did plaintiff incumber the property in excess of $3,000, without the knowledge or consent of the defendant? The defendant's agent knew of and consented to the incumbrance of $1,800 to the Northwestern Mutual Life Insurance Company, and, as the amount realized was applied on the existing loan, it did not increase the incumbrance. Defendant contends that the two mortgages to Shriver were given without its knowledge or consent, and that thereby the property was incumbered in excess of the amount allowed. The mortgages to Shriver were given after the first policies were issued, and before the ones sued upon were executed. Mr. Tidrick assisted in procuring the cancellation of the real estate from the first policy, and in securing the issuance of the policy in suit, and in so doing was acting as agent for the defendant. While the evidence is conflicting as to whether Mr. Tiderick then knew of the Shriver mortgages, we think the weight of the evidence is in favor of the conclusion that he did. This knowledge is chargeable to the defendant. *Hagan v. Ins. Co.,* 81 Iowa, 321. Out of the proceeds of the $1,800 loan and the Shriver loan, the original incumbrance was paid off, so that these two were the only incumbrances remaining. The $515 to Shriver was upon a separate tract of land from that covered by his other mortgage, but both tracts were included in the policy. This mortgage was additional security for $400 included in the other mortgage, the actual indebtedness to Shriver being $1,430, which, with the $1,800, made the incumbrance $3,230. It appears that $400 had been paid on the largest mortgage to Shriver before the loss occurred,

December 8, 1897, thus leaving less than $3,000 incumbrance at the time of the loss. Our conclusion is that the plaintiff did not incumber the property in excess of the amount allowed, without the knowledge and consent of the defendant.

V. What we have said disposes of the defendant's third contention, and brings us to inquire whether the plaintiff furnished proofs of loss within 60 days, as required.

The loss occurred December 8, 1897, and on Saturday, February 5, 1898, proofs of loss, in due form, were mailed to the defendant, and received by it on Monday, February 7, 1898. Sunday, February 6th, was the sixtieth day. Paragraph 23, section 48, of the Code, provides that, "in computing time, the first day shall be excluded and the last included, unless the last falls on Sunday, in which case the time prescribed shall be extended so as to include the whole of the following Monday." Applying this provision, proofs were furnished within the time required, and therefore we need not inquire whether or not there was a waiver of these proofs. Our conclusion upon the whole record is that the decree of the district court is correct, and it is therefore AFFIRMED.