PROVIDENCE WASHINGTON INSURANCE COMPANY v. McKENZIE.

4-9896                                    252 S. W. 2d 627

Opinion delivered November 24, 1952.

236

*House, Moses & Holmes* and *William M. Clark,* for appellant.

*Killough & Killough,* for appellee.

MINOR W. MILLWEE, Justice.   This is an action by plaintiff, Lonnie McKenzie, to recover for the loss of his automobile by fire under an insurance policy issued to him by the defendant, Providence Washington Insurance Co.   At the conclusion of plaintiff's testimony, each party requested a directed verdict whereupon the trial court took the case from the jury and rendered judgment for plaintiff in the sum of $575, plus the statutory penalty and attorney's fee.

There is no dispute in the material facts.   Sometime in the latter part of 1949 plaintiff, a resident of Wynne, Arkansas, had extensive repairs made on his 1941 Pontiac automobile.   He approached David Drexler, owner and manager of Wynne Insurance & Loan Co., about a loan to pay for the repairs and a small balance owing to a finance company.   Plaintiff borrowed $400 from Wynne Insurance & Loan Co. which he used to pay the repair bill and the balance due the finance company. He executed his note payable in ten monthly installments to the Wynne company and a mortgage on his car to secure payment of the note.   In making the loan

Drexler required that plaintiff insure the car. Drexler's company was engaged in both the insurance and loan businesses and he was the agent of several insurance companies including the defendant.

On December 10, 1949, which is apparently the same date that the loan was consummated, Drexler, as agent for defendant, issued a policy to plaintiff insuring the car against loss by fire, theft, collision and windstorm for one year at a premium of $66.55 which plaintiff paid. The mortgage to Wynne Insurance & Loan Company was declared in the policy which contained a loss payable clause in the company's favor.

On September 20, 1950, plaintiff borrowed $225 from Herman Young and paid the balance of $100 remaining due under the mortgage to Wynne Insurance & Loan Company and another debt. The note to Young was payable in monthly installments of $56.25 and was secured by a mortgage on the car executed by plaintiff on the same date that he paid the balance of the first loan. The payment to the Wynne Insurance & Loan Co. was made to Mrs. Beverly Byrd, Drexler's secretary, cashier, and general office manager, who was experienced in the insurance business and had broad authority to act for Drexler when he was absent from the office. When plaintiff paid the balance of the first loan, he told Mrs. Byrd that he had borrowed money on the car to pay off his debts. When the payment was made Mrs. Byrd delivered the cancelled note and mortgage to plaintiff, but did not deliver the copy of the insurance policy which the company had retained and the mortgage to Herman Young was never indorsed or otherwise noted on the policy.

Plaintiff made the first payment of $56.25 due under the mortgage to Young. The car was destroyed by fire on November 18, 1950. Plaintiff immediately notified Drexler and the latter told him to get a wrecker and bring the burned car to Wynne.

The defendant's request for a directed verdict in its favor was predicated on the defense set up in its answer

that plaintiff was barred from recovery under that provision of the policy which states: "This policy does not apply: . . . (b) under any of the coverages, while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy." Although the trial court did not indicate the ground upon which the judgment was based, the cause was apparently presented by plaintiff on the theory that defendant had either waived this provision of the policy or was estopped to rely upon it since much proof was directed to the authority of Mrs. Byrd to bind the defendant on these issues. Both parties have presented excellent briefs on the waiver question.

In view of our conclusion that the facts presented fail to show a violation of the above clause against encumbrances, we find it unnecessary to determine whether waiver was effectively established. While there is some conflict in the decisions on the question, the weight of authority supports the general rule that the execution of a new mortgage in a sum equal to or smaller than the amount of the mortgage to which the insurer has assented, does not constitute a violation of the clause against encumbrances where the new mortgage is executed at the time of or after a complete discharge of the original mortgage. 29 Am. Jur., Insurance, § 628. This rule has been applied in several cases where the facts, as here, show that no prejudice could have resulted to the insurer from the execution of the second mortgage. The cases are collected in an annotation in 163 A. L. R. 1402.

In *Kister* v. *Lebanon Mut. Ins. Co.*, 128 Pa. 553, 18 A. 447, 5 L. R. A. 646, the policy provided that it should be void "if the insured have the property encumbered without notice to the company indorsed hereon." In holding that the provision was not violated by liens placed on the property without notice to the company after issuance of the policy where such liens were less than the amount of the original mortgage, the court said: "This provision of the policy is based upon the

increased risk resulting from incumbrances. A person is supposed to have less interest in the preservation of his property when it is incumbered beyond its value. If the testimony contained in the offer is true, the company was willing to assume the obligation with the incumbrances then existing, and if these incumbrances were not increased in amount during the continuance of the policy then the company was merely held to the risk which it at first assumed, and no more.'' The rule was followed in *Gould* v. *Dwelling House Ins. Co.*, 134 Pa. 570, 19 A. 792, and *Weiss* v. *American F. Ins. Co.*, 148 Pa. 349, 23 A. 991.

In the following cases it was held that the condition against encumbrances is not violated where the insured pays off the original declared mortgage and executed a second mortgage in a sum equal to or less than the original mortgage. *Bandy* v. *East & W. Ins. Co.* (Mo. App.) 163 S. W. 2d 350; *Koshland* v. *Home Mut. Ins. Co.*, 31 Or. 321, 49 Pac. 864, 50 Pac. 567; *McKibban* v. *Des Moines Ins. Co.*, 114 Iowa 41, 86 N. W. 38; *Georgia Home Ins. Co.* v. *Stein*, 72 Miss. 943, 18 So. 414.[1]

The case of *Medford* v. *Pac. Nat. Fire Ins. Co.*, 189 Or. 617, 219 Pac. 2d 142, 222 Pac. 2d 407, 16 A. L. R. 2d 1181, involved a provision identical with the one under consideration here. The Oregon court held that the provision was a stipulation against encumbrances existing when the insurance contract was made, but not against future encumbrances on the ground that the phraseology used created an ambiguity which should be resolved in favor of the insured. This holding seems to be against the weight of authority and we merely mention it here to show the extent to which some courts go in order to protect the insured against a forfeiture of his policy. See criticism by the annotator in 16 A. L. R. 2d 752.

It should be noted that in some of the foregoing cases the second mortgage was for a sum less than, or equal to, the amount of the first mortgage debt existing at the time of the issuance of the policy while in others the second mortgage was for a sum equal to the origi-

[1] Contra: *Hankins* v. *Rockford Ins. Co.*, 70 Wis. 1, 35 N. W. 34.

nal indebtedness as reduced by subsequent payments. The principle involved in these cases was recognized by this court in *National Union Fire Ins. Co.* v. *Avant,* 167 Ark. 307, 268 S. W. 20. In that case the loss payable clause in an automobile policy provided that the policy would be wholly void if any of the notes due the mortgagee should not be completely paid on or before ten days after maturity, or if any change be made in any of the notes representing the encumbrances otherwise than by payment. At the time the automobile burned, the insured had arranged with the mortgagee for an extension of some of the notes without notice to the insurer and the notes had been past due and unpaid for more than ten days after maturity. In affirming a judgment for the insured the court said: ''The words in the clause, 'if any change is made in any of the notes representing said indebtedness or incumbrance,' necessarily meant some change that would be detrimental to the insurer. The parties to the contract of insurance could not have meant that immaterial changes, or changes that did not affect the risk, were included in the contract. See *Providence Life Assurance Society* v. *Reutlinger,* 58 Ark. 528, 25 S. W. 535; *Mutual Reserve Fund Life Insurance Co.* v. *Farmer,* 65 Ark. 581, 47 S. W. 850; *Des Moines Life Ins. Co.* v. *Clay,* 89 Ark. 230, 116 S. W. 232.

''Under the construction we give the policy, the extension of the time for the payment of the notes was not a change in the notes, but, if so, certainly not a material change. So far as the insurer was concerned; its purpose was to preserve the conditions that existed at the time of the issuance of the policy, and to have the policy so framed that it would be warranted against any change in the notes representing the indebtedness that would affect the risk to its prejudice.''

Applying these principles here, we hold that the undisputed facts do not show a violation of the spirit and purpose of the clause against encumbrances. The original mortgage to which appellant assented was for $400. At the time of the fire the second mortgage had been reduced to $168.75 and the car was then worth $575.

There was no fraudulent concealment by the plaintiff and there was certainly less risk of an intentional burning at the time of the fire than the company assumed in the first instance. If defendant thought the policy was voided by the execution of the second mortgage, it seems that it would have tendered a return of the unearned portion of the premium, but it has not done so. As to future encumbrances, we think the policy should be construed as applying to an encumbrance prejudicial to the insurer and was not meant to cover one that did not affect the risk which the defendant was willing to accept when it issued the policy. We realize that automobile values are subject to considerable fluctuation and we would not follow the rule laid down in the Pennsylvania cases where it is shown that the second mortgage affected the risk to the prejudice of the insurer, even if such mortgage involved a sum less than the amount of the original indebtedness.

Defendant also contends the $575 figure which the court fixed as the difference in market value of the car immediately before and after the fire was excessive. Without reviewing the various estimates as to market value, it is sufficient to say that there was substantial evidence to support a judgment for any sum from $565 to $580.

The judgment recites a penalty of 12½% instead of the statutory 12%. Both parties concede that this was an inadvertent error. The judgment will, therefore, be corrected to show a penalty of 12%. With this modification, the judgment is affirmed.