This is an appeal from a final judgment of the Circuit Court of Montgomery County holding invalid an assault and battery exclusion in the insurance contract entered into by plaintiff Alliance Insurance Company, Inc., and defendants Joshua Reynolds and Alberta V. Williams, d/b/a the Tyjuana Social Club and Paradise Club. The specific question presented is whether the insureds were adequately notified of the change in coverage provided by a substituted policy so as to exclude from coverage under that new policy claims made against them for "assault and battery." We affirm.
The trial court entered the following order:
 "This action having come before the Court on a Bill for Declaratory Judgment requesting the Court, inter alia, to determine the rights, status and legal relations of the plaintiff and all of the defendants under the policy of insurance issued by the plaintiffs to the defendants, Joshua Reynolds and Alberta V. Williams, d/b/a Tyjuana Social Club and Paradise Club.
 "The action was set for hearing on the merits with Attorney David Allred present representing the plaintiff, Alliance Insurance Company, Inc., and attorney Al Sansone present representing the defendants, Joshua Reynolds and Alberta V. Williams, d/b/a Tyjuana Social Club and Paradise Club. The Court, after taking testimony and reviewing the documents admitted at trial and the post trial letter brief submitted by plaintiff, makes the following findings and issues the following order.
"FINDING OF FACTS
 "1. Plaintiff and Defendants contracted, through defendants' agent Nace *Page 611 
[Varon], for a custom package policy on or about September 20, 1978. The liability portion of the policy covered assault and battery offenses to the extent that the carrier would defend the insured on an assault and battery complaint. This policy was renewed each year through September, 1981.
 "2. In September, 1981, the liability portion of the policy expired and defendants retained fire and hazard coverage. In 1982, the liability portion of the policy was renewed the same as it had been from 1978 thru 1981.
 "3. On or about September 24, 1983, plaintiff's agent sent defendants' agent notice of the expiration of the policy by a `Renewal Quotation Slip' and gave defendants' agent the choice of `renew as is,' `renew-note changes on back,' or `quote renewal, based on changes on back.' Information accompanying the slip was related to automobile coverage and possible change of insurance carriers. Defendants' agent returned the notice marked `renew as is.' In response to the notice of renewal, plaintiff's agent sent defendants' agent the policy in question without any notice accompanying the policy showing that the exclusion in the original policy had been enlarged. Defendants' agent sent the policy to the defendants. Neither defendants' agent nor defendants read the policy.
 "4. When this controversy arose, defendants discovered that the policy contained an exclusionary clause that is materially different from the previous policies in that it had been enlarged to exclude coverage for any assault and battery. Furthermore, it does not offer insured any defense on a complaint of assault and battery.
"AUTHORITIES IN SUPPORT OF ORDER
 "In general, no particular form of renewal is necessary. The renewal may be by renewal slip as was done in this case, and unless the renewal agreement so recites or unless it provides otherwise, the terms and conditions of the existing policy are not changed, enlarged, or restricted by a renewal but are merely continued in force as binding on the parties. . . . 44 C.J.S. Insurance, § 285.
 "If an insured [is] not notified of a change in a renewal policy, he will not be bound by [any] change; and it is immaterial that he does not examine the renewal policy until after the event insured against has occurred. [Emphasis added.] In the absence of any agreement for an alteration of the original terms, a renewal policy containing alterations may be reformed. C.J.S., supra.
 "Based on a lack of evidence at trial showing that notice of the change in the exclusionary portion of the policy was given to defendants' agent by plaintiff's agent, it is the Court's opinion and ruling that the policy which is the subject of this action is to be reformed to encompass the exclusionary portion of the original policies. Additionally, the Court has formed its opinion and makes its ruling after carefully scrutinizing the evidence adduced at trial pursuant to Sexton v. Liberty National Life Ins. Co., 405 So.2d 18
(Ala. 1981), the main authority relied on by plaintiff. In Sexton, the Court stated:
 "`If the policy is accepted by the insured he is bound thereby even though the policy does not correspond to the preliminary negotiations. The oral negotiations for the policy are merged into the accepted policy.'
 "Sexton is a correct statement of the law; however, the discernible difference in the facts of Sexton and the case at Bar is that in Sexton there was negotiation of the policy, while in this case no negotiation was necessary. [Emphasis added.] All negotiation in this case was done at the time of the purchase of the original policy. This policy was either to be `renewed as is' or the defendants, through their agent, were to be informed by plaintiff's agent of any changes in the policy. This was not done. Based upon the foregoing, it is hereby: *Page 612 
". . . .
 "ORDERED, ADJUDGED and DECREED, that the policy in issue be reformed to reflect the exclusion contained in the original policy; therefore, the plaintiff is to defend defendants in this matter."
We begin by noting that the trial court, without a jury, heard ore tenus evidence in this case. Therefore, every presumption will be indulged in favor of the trial court's findings of fact, and its findings will not be disturbed on appeal unless they are unsupported by credible evidence or are found to be plainly and palpably wrong. Johnson v. Brewington,435 So.2d 64 (Ala. 1983); Stallworth v. First National Bank ofMobile, 432 So.2d 1222 (Ala. 1983); Woodard v. City of Decatur,431 So.2d 1173 (Ala. 1983).
Alliance's primary contention on appeal is that the assault and battery exclusion in its contract with Reynolds and Williams is valid because it did not insure Reynolds and Williams until October 14, 1983, and its policy never included coverage for assault and battery claims. Prior to October 14, 1983, the defendants were insured by the Casualty Indemnity Exchange (Casualty). The original policy with Casualty, which was negotiated in 1978, did include assault and battery coverage; therefore, from 1978 to October 14, 1983, except for a period from October 13, 1981, to October 16, 1982, when Reynolds and Williams did not have any liability insurance at all, the defendants were covered for damage or loss resulting from assault and battery claims.
Defendants contend that because they never received notice that their policy with Alliance did not include coverage for assault and battery claims, when their agent returned the renewal notice to Alliance marked "as is," they assumed that coverage would be the same as that provided by Casualty.
While our research has revealed no Alabama cases directly on point, this Court in National Union Fire Ins. Co. v. Morgan,231 Ala. 640, 166 So. 24 (1936), held as follows:
 "The rights of the parties on renewal of existing insurance are to be determined by the terms and conditions of the original policy, which are continued in force, except as altered in the contract of renewal; and it will be presumed that an agreement to renew contemplated a renewal on such original terms." 26 Corpus Juris, 109, p. 110.
 "In the absence of an agreement to the contrary, the terms of the contract of insurance are neither enlarged, restricted, or changed by the renewal, but the rights of both parties, no matter how often a policy of insurance may have been renewed, are still controlled by the provisions of the policy as originally issued. Aetna Ins. Co. v. Short, 124 Ark. 505, 187 S.W. 657 [1916]; Witherell v. Maine Ins. Co., 49 Me. 200 [1861]; Aurora Fire Marine Ins. Co. v. Kranich, 36 Mich. 289 [1877]; Hartford Fire Ins. Co. v. Walsh, 54 Ill. 164, 5 Am.Rep. 115 [1870]. This being the law, it cannot be doubted that, in issuing the policy sued upon, whatever representations or statements made by the insured, when the policy was first issued, were to be considered as being still operative and binding both upon the insured and the insurer, and not alone upon the insured. James McKibban v. Des Moines Ins. Co., 114 Iowa 41, 86 N.W. 38 [1901]."
National Union Fire Ins. Co. v. Morgan, 231 Ala. at 648,166 So. at 31.
We are unpersuaded that a different rule should govern where, as here, the present insurer did not negotiate the first insurance policy but the insured had no notice that a new company was handling his insurance. Despite the fact that the defendants' insurance coverage was switched from Casualty to Alliance, defendants did not receive notice that their coverage would be different because of the change in the carrier. Exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it. Westchester *Page 613 Fire Ins. Co. v. Barnett Millworks, Inc., 364 So.2d 1137 (Ala. 1978). We believe the same principle should apply in determining whether an exception is applicable. Consequently, we are of the opinion that the burden fell upon Alliance or its agent to notify defendants or their agent of any changes from the coverage provided by Casualty.
In its brief, Alliance notes that, "The suit policy was applied for in September, 1983, and was issued by Alliance's agent, L.E. Rife Agency, on October 26, 1983." After reviewing the record, we are of the opinion that sufficient evidence was presented at trial from which the trial court could have found that Rife was Alliance's agent and was vested with the power to act for and bind Alliance.
The evidence presented at trial shows that the defendants' agent, Nace Varon, dealt solely with Rife from 1978 onward. It was Rife's responsibility to place the defendants' coverage with the proper company. The only notice that Varon received from Rife suggesting that the policy in 1983 contained different provisions, or even that a different company was handling the defendants' insurance, was contained in the following provision on the renewal slip:
 "This quote is based on information in our file. If this is a private passenger automobile policy a report will be obtained on each driver and if violations or at-fault accidents are shown which we have no record of, the premium may be higher. This coverage may or may not be written in the same company and the new policy will be subject to the policy form and conditions approved by the company.
If there are new drivers or any changes in the policy please advise. If renewal is desired, please advise prior to expiration date. Coverage will not be renewed unless we receive instructions from you." (Emphasis added.)
Alliance contends that the underlined sentence above placed defendants on notice that the policy might be different from previous policies. We disagree. Where an exclusion is enlarged, as here, the policyholder must be given more specific notice of that change than was given in this case.
Because neither Alliance nor its agent notified either defendants or their agent of the new assault and battery exclusion, the trial court did not err in finding in favor of defendants. We affirm.
AFFIRMED.
ALMON and SHORES, JJ., concur.
TORBERT, C.J., and BEATTY, J., concur in the result.