648 So.2d 556 (1994)
James W. HALL
v.
AMERICAN INDEMNITY GROUP and Alabama First Insurance Company.
1930717.
Supreme Court of Alabama.
September 2, 1994.
Rehearing Denied October 14, 1994.
*557 Samuel Maples, William K. Bradford, Birmingham, for appellant.
John M. Bergquist of Parsons, Lee & Juliano, P.C., Birmingham, for Alabama First Ins. Co.
Perry G. Shuttlesworth, Jr., Birmingham, for American Indem. Group.
STEAGALL, Justice.
Alabama First Insurance Company ("Alabama First") brought a declaratory judgment against James W. Hall and American Indemnity Group ("American Indemnity"), seeking a determination of the parties' rights and obligations under two separate Alabama First and American Indemnity policies that insured a rental house that Hall owned. Alabama First alleged that the rental house had sustained water damage that was not covered under the two policies. Hall cross-claimed against American Indemnity and counterclaimed against Alabama First for a declaratory judgment and for damages, alleging that he was due coverage under the policies and that both insurers had breached the insurance contracts by failing to provide that coverage. He also claimed damages from both insurers, alleging bad faith, fraud, and the tort of outrage, arising from their denials of coverage.
American Indemnity and Alabama First each moved for a summary judgment; the trial court granted their separate motions, except as to the breach of contract/coverage claim. Thereafter, Hall did not comply with certain discovery orders, and Alabama First moved to dismiss the breach of contract/coverage claim. The trial court granted this motion, and American Indemnity then moved for a summary judgment on this issue. The trial court entered a summary judgment for American Indemnity, holding that the insurance *558 policy excluded coverage for the type of water damage Hall's rental house had sustained. Hall appeals.
In October 1989, the main water line going into the basement wall of Hall's rental house burst, causing a sudden building of hydrostatic pressure that pushed the basement wall inward. The tenants of the house notified Hall about the break and told him that there were large amounts of water in the basement and around the front of the house near the exterior basement wall. Hall submitted to Alabama First and American Indemnity claims for the structural damage to the basement wall and foundation, and both companies employed experts to investigate the premises and to determine the cause of the damage. Neither company discovered that Hall had two policies until after each had investigated the premises of the house and had independently concluded that the damage was excluded from coverage under its policy.
We begin by addressing the issues that pertain to American Indemnity. Hall first argues that the trial court erred in entering a summary judgment for American Indemnity on the breach of contract/coverage claim and the bad faith refusal to pay claim. In its order, the court held that Hall's American Indemnity policy specifically excluded coverage for any structural damage to the foundation of the rental house that was caused by a build-up of water pressure. Hall argues that the court misconstrued this exclusion and that the summary judgment was improper.
The American Indemnity policy contains a section entitled "PERILS INSURED AGAINST," which provides, in pertinent part:
"We insure for all risks of physical loss to the property described in Coverages A and B except:
"1. losses under General Exclusions;
". . . .
"3. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;
". . . .
"8. continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating or air conditioning system or from within a household appliance;
"9. wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals. If any of these cause water to escape from a plumbing, heating or air conditioning system or household appliances, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped."
(Emphasis added.) In addition to the foregoing provisions, the policy contains a "GENERAL EXCLUSIONS" clause, which states:
"We do not cover loss resulting directly or indirectly from:
". . . .
"3. Water Damage, meaning:
"a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
"b. water which backs up through sewers or drains; or
"c. water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure."
(Emphasis added.) Thus, on its face, the policy generally excludes coverage for damage that is caused by water below the surface of the ground that exerts pressure on the foundation of the insured structure, but nevertheless provides coverage for some losses caused by water leakage from a plumbing *559 system, if the leakage is due to any of the many causes set out in Exclusion 9 and is not continuous over a period of time.
While Hill does contend that these provisions create an inherent ambiguity that requires this Court to construe the policy against American Indemnity, he argues more vigorously, in the alternative, that the policy is not ambiguous but merely difficult to reconcile. He argues that Exclusion 3 denies coverage for damages caused by water pressure against the insured structure's foundation only when the pressure comes from water underneath the surface of the ground flowing from "natural sources," such as groundwater, precipitation, or flooding. Hill argues that Exclusion 9 allows for coverage for damage to the foundation from water pressure that comes from leaks in underground "artificial" or man-made devices, such as plumbing systems, if the leaks result from any of the causes listed in Exclusion 9.
We do not agree with Hall's strained interpretation of these provisions, nor do we find that the provisions create an ambiguity. Insurance contracts, like other contracts, are construed to give effect to the intention of the parties and, to determine this intent, the court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions. State Farm Mut. Auto. Ins. Co. v. Lewis, 514 So.2d 863 (Ala.1987). Exclusion 3 of the "Perils Insured Against" section and Exclusion 3 in the "General Exclusions" section clearly state that the policy will not cover damage to a foundation caused by water pressure. Exclusion 8 of the "Perils Insured Against" section excludes damages caused by continuous leakage. Exclusion 9 of that section provides that the policy will cover "loss" caused by leakage from plumbing systems if it is caused by certain conditions; however, it does not make this coverage absolute. Construed together, these four provisions state that the policy will cover some losses caused by leakage from plumbing systems, if the leakage arises from any cause listed in Exclusion 9, but will not cover damage to the foundation caused by water pressure or from continuous leakage. The record contains expert evidence indicating that the damage to Hall's rental house was caused both by water leakage that continued over a period of years and by the sudden burst in the water line. Thus, the trial court properly held that Hall's claim was excluded under the American Indemnity policy. The summary judgment for American Indemnity on both the breach of contract/coverage claim and the bad faith failure to pay claim is affirmed.
We next address the issues that pertain to Alabama First. Hall argues that the trial court abused its discretion in dismissing his breach of contract/coverage claim against Alabama First. The court entered the dismissal on September 7, 1993, and certified it as final pursuant to Rule 54(b). Hall did not appeal from this dismissal within 42 days; thus, his appeal as to this claim is untimely.
The only issue pertaining to Alabama First that is properly before us is whether the trial court erred in entering the summary judgment against Alabama First on the issue of bad faith failure to pay an insurance claim. To establish this claim, Hall must show that there existed: (1) an insurance contract between the parties and a breach thereof by the defendant; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason. Koch v. State Farm Fire & Cas. Co., 565 So.2d 226 (Ala.1990).
The Alabama First policy excludes coverage for damage to the foundation of the rental house when such damage was caused by pressure of subsurface water or by continuous water seepage over an extended period of time. With its motion for a summary judgment, Alabama First filed an affidavit from Mary Carlson, the tenant who occupied the rental house at the time the water line burst, along with reports from a professional adjusting firm and a licensed engineer who personally inspected the premises of the rental house. Both the adjuster's reports and the engineer's reports concluded that the damage was caused by continuous water seepage, as well as by water pressure exerted from the broken main water line. Hall filed no affidavits or other documents to rebut this evidence.
*560 In reviewing a summary judgment, this Court may consider only those matters that were before the trial court when it ruled on the summary judgment motion. Cleveland v. Central Bank of the South, 574 So.2d 741 (Ala.1990). On a motion for a summary judgment, the movant is required to make a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. See, also, Willingham v. United Insurance Co. of America, 642 So.2d 428 (Ala.1994), and the cases cited therein. The burden then shifts to the nonmovant to introduce substantial evidence to rebut this prima facie showing; the nonmovant may not rest upon mere allegations or denials of the pleadings, but must submit evidence controverting that presented by the moving party. Rule 56(e), A.R.Civ.P.
Hall presented no evidence to rebut Alabama First's showing that it had a legitimate reason to deny payment under the policy; thus, the summary judgment on this issue was proper. It is therefore affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, HOUSTON and KENNEDY, JJ., concur.
HORNSBY, C.J., concurs in part and dissents in part.
INGRAM, J., dissents.
HORNSBY, Chief Justice (concurring in part and dissenting in part).
I concur in the holding as to Alabama First Insurance Company, but I join Justice Ingram in his dissent from the holding as to American Indemnity Group.
INGRAM, Justice (dissenting).
James Hall's house sustained structural damage when the buried water line furnishing water to the house burst just outside the basement wall or at the basement wall, causing the basement wall to be pushed inward. In my opinion, the terms of the insurance contract executed between Hall and American Indemnity create a jury question as to whether American Indemnity should provide coverage for the damage. Accordingly, I dissent from the majority's affirmance of the summary judgment in favor of American Indemnity.
It should first be noted that the provisions of insurance policies must be construed as the ordinary person would interpret those provisions. St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp., 584 So.2d 1316 (Ala.1991). Of course, if a contract is plain and unambiguous, it is the duty of this Court to enforce its provisions as written. Murray v. Alfab, Inc., 601 So.2d 878 (Ala.1992). However, if the language of the American Indemnity insurance policy is ambiguous, that language must be liberally construed in favor of Hall. Scottsdale Ins. Co. v. Town of Orange Beach, 618 So.2d 1323 (Ala.1993). Further, it is well settled that a contract's exceptions to insurance coverage must be interpreted as narrowly as possible against the insurer, so as to provide maximum coverage for the insured. Alliance Ins. Co. v. Reynolds, 494 So.2d 609 (Ala.1986).
In my opinion, the "PERILS INSURED AGAINST" and the "GENERAL EXCLUSIONS" provisions of the American Indemnity policy are ambiguous. As the majority notes, the "PERILS INSURED AGAINST" provision includes coverage of the following:
"9. wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals. If any of these cause water to escape from a plumbing, heating or air conditioning system or household appliances, we cover loss caused by the water."
(Emphasis added.) However, the policy's exclusion provisions refuse coverage for the following:
"3. Water Damage, meaning:
". . . .
"c. water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a *561 building, ... foundation, ... or other structure."
I believe that a jury could easily determine that the American Indemnity contract provides for coverage of Hall's damage caused by the burst plumbing pipe. It is generally recognized that the homeowner's plumbing (water line) begins at the supplier's meter and extends to and throughout his house. It is doubtless that the pressure from his plumbing caused the basement wall to deteriorate; this damage falls clearly within clause 3 of the "PERILS INSURED AGAINST" provision. A jury could also possibly find coverage for Hall under clauses 8 and 9 of that provision. Although American Indemnity attempts to exclude damage from "water which exerts pressure on ... a ... foundation," that exclusion must be construed against American Indemnity. Alliance Ins. Co. v. Reynolds, supra. Given the facts of this case and the contradictory provisions of the American Indemnity insurance policy, it is clear to me that the question of Hall's coverage is properly one for the jury. Therefore, I respectfully dissent.
HORNSBY, C.J., joins INGRAM, J., as to that portion of this dissent regarding American Indemnity Group.