[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 663 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 664 
The plaintiff, J. Gilmer Blackburn, appeals from summary judgments entered in favor of the defendant, Fidelity and Deposit Company of Maryland (hereinafter "F D"), on his claims of bad faith failure to provide insurance coverage and fraudulent suppression of a material fact. We affirm in part, reverse in part, and remand.
 I. Facts
Blackburn is an attorney with the law firm of Blackburn, Maloney, Schuppert, P.C. (hereinafter "the Blackburn firm"), located in Decatur, Alabama. The Blackburn firm served as legal counsel to Mutual Savings Life Insurance Company (hereinafter "Mutual Savings"), also located in Decatur, and, in or about 1982, assisted Mutual Savings in establishing an employee stock ownership plan (hereinafter "Mutual Savings ESOP"). In 1988, the Blackburn firm performed legal services for the Mutual Savings ESOP in connection with the purchase of a controlling number of shares in Mutual Savings from Louis J. Roussel, Jr., and others at $92.40 per share. This complex transaction became known as "the Roussel buy-out."
F D had previously issued Mutual Savings a "Pension and Welfare Fund Fiduciary Responsibility Insurance Policy,"; that "claims made" policy was effective from May 31, 1988, to May 31, 1989. The "Insuring Clause" of the F D policy stated:
 "The Company will pay on behalf of the Insured (as herein defined) all sums which the Insured shall become legally obligated to pay as damages due to any claim made during the policy period against the Insured because of:
 "(a) any Breach of Fiduciary Duty (as herein defined) by an Insured, or
 "(b) any Breach of Fiduciary Duty by any other person for whom the Insured is legally responsible in the discharge of their duties as respects the Plan(s) (as herein defined), and the Company shall have the right and duty to defend such claim
[breach of fiduciary duty claim] against the Insured seeking such damages, even if any of the allegations of the claim are groundless, false or fraudulent, and may make such investigation and, with the written consent of the Insured, may settle any claim as it deems expedient but the Company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements."
(Emphasis added.) The F D policy defined the term "Insured" as:
 "(1) The Sponsor Organization (as herein defined).
"(2) The Plan(s).
 "(3) Any natural person who was or now is or may hereafter be a director, officer or employee of the Sponsor Organization or of the Plan(s) or a Trustee of the Plan(s) and, in addition, the estate, heirs or legal representatives of any such natural person who is deceased or incompetent.
 "(4) Any other person named as an Additional Insured in Item 4 of the Declarations."
(Emphasis added.) Further, the policy defined "Breach of Fiduciary Duty" as follows:
 "[T]he violation of any of the responsibilities, obligations or duties imposed upon Fiduciaries by the Employee Retirement Income Security Act of 1974 and any amendments thereto, or the common law or statutory law of any other jurisdiction governing any of the Plan(s); the term includes any negligent act, error or omission of the Insured in the Administration of any of the Plan(s)." *Page 665 
On September 26, 1988, at a special meeting of Mutual Savings stockholders, Blackburn was elected a director nominee; he was to become a director and chairman of the board of directors of Mutual Savings if the Roussel buy-out was completed. At that meeting, Blackburn presented an overview of the Roussel buy-out to the stockholders and recommended approval. The stockholders voted to approve the transaction. On October 12, 1988, at a special meeting of the Mutual Savings board of directors, Blackburn became a member of the board and an "insured" under F D's policy. Blackburn and the other five directors voted unanimously to approve the Roussel buy-out.
Shortly after the buy-out was completed, a series of lawsuits was filed because of it, contending that the Mutual Savings ESOP had paid too much money for the stock in the buy-out. On December 29, 1988, a shareholder derivative action against the Mutual Savings directors, styled Hutson v. Roussel et al., was filed contemporaneously in both a state court and a federal court. The Hutson complaints alleged fraud in the sale of securities (count I), violation of federal securities law (count II), violation of state securities law (count III), breaches of fiduciary duty and corporate and insurance law (count IV), the making of unlawful investments and payment of illegal dividends (count V), statutory fraud and deceit (count VI), and conspiracy to commit fraud (count VII). The action named Blackburn as a defendant in counts I, II, III, VI, and VII.
On January 16, 1989, certain participants in and beneficiaries of the Mutual Savings ESOP filed an action in a federal district court, styled Dawson v. Roussel, et al., alleging violations of the Employee Retirement Income Security Act (hereinafter "ERISA"). The Dawson complaint mentioned Blackburn and the Blackburn firm but named neither as a defendant.
Then, on March 9, 1989, the president of Mutual Savings, James Jeter, forwarded copies of the complaints, along with a "notice of claims" to F D. Following the March 9 letter and a May 23 Birmingham meeting, F D hired counsel to provide a defense to the lawsuits for the other five current directors and three past directors. However, despite a July 14, 1989, letter from Blackburn's law partner, Kenneth Schuppert, to F 
D specifically requesting that F D provide Blackburn with a defense to the lawsuits, it refused, on the grounds that Blackburn was not named as a defendant in the claims covered by the insuring provision.
In response, F D wrote Schuppert, stating that the July 14 letter was the first notice that it had received of any request by Blackburn for a defense and asking Schuppert to specify the claims for which he thought F D was responsible under its policy. The response further stated that an investigation into Blackburn's claim for coverage was continuing, but that (1) Blackburn's alleged actions appeared to fall within the exclusions of F D's policy, and (2) F D's coverage was intended to be "excess" coverage in regard to any other available insurance, particularly the Blackburn firm's professional liability insurance carrier.
On August 3, 1989, Schuppert again wrote to F D, stating that the March 9 Mutual Savings letter had provided notice of the claims against Blackburn, as well as the other directors for whom F D was already providing a defense. He informed F D that, even though Blackburn appeared to have been sued in his capacity as a Mutual Savings director, the Blackburn firm's legal malpractice insurance carrier had been notified as a merely precautionary measure.
Schuppert's letter was discussed in an August 9, 1989, internal F D memorandum, which noted a planned declaratory judgment action against Blackburn, "who [F D had] not chosen to defend at [that] time." On August 14, F D wrote a response to Schuppert, stating that Blackburn was not named as a defendant in count IV of the Hutson complaints, which count alleged breach of a fiduciary duty imposed by ERISA, and, therefore, that he appeared to fall within the scope of several of the policy's exclusions to coverage. Schuppert responded with two letters to F D restating that it was Blackburn's belief that he was covered by the policy and should be receiving the benefits of the policy, as were other Mutual Savings directors. Then, F D filed a *Page 666 
declaratory judgment action in a federal court, seeking a declaration that it did not owe defense or indemnity duties to Blackburn in relation to the Hutson actions.
On October 11, 1990, another lawsuit based on the Roussel buy-out was filed in both state and federal courts, styledMutual Savings Life Insurance Company v. Roussel, et al. The complaint alleged breach of fiduciary duties imposed by ERISA (count I), securities fraud (count II), violation of federal securities law (count III), violation of state securities law (count IV), breach of fiduciary duties imposed by state law (counts V and VIII), legal malpractice (counts VI and VII), and violation of federal RICO law (count IX). Blackburn was named as a defendant as to counts I through IV and count VI, and, for the first time, the Blackburn firm was named as a defendant, based on alleged legal malpractice. At this point, the Blackburn firm's professional liability insurance carrier, pursuant to a reservation of rights letter, began defending it against the malpractice claims, but Schuppert continued to represent Blackburn individually with respect to all other claims.
Based on the October 1990 complaint, on January 14, 1991, Schuppert wrote to F D, requesting that it provide a defense for Blackburn, noting that Mutual Savings had specifically alleged that Blackburn had breached fiduciary duties imposed by ERISA. In February 1991, F D replied to Schuppert's request, stating that its position about coverage for Blackburn had not changed. F D stated that it believed the Blackburn firm's legal malpractice insurance carrier was providing a defense to Blackburn and his firm and that F D's policy provided excess coverage only. F D's posture was stated by a February 1991 internal memorandum: "I assume that we wish to reject providing for Blackburn's defense."
In March 1991, the federal judge dismissed sua sponte F D's first declaratory judgment action, and F D appealed the dismissal. Also in March, Schuppert wrote to F D, stating that he was aware that F D was in settlement negotiations with the plaintiffs in the Mutual Savings action and that F D was considering entering into a settlement that did not include Blackburn. Schuppert indicated that he thought a settlement excluding Blackburn would be an action in bad faith. On April 4, 1991, F D replied to Schuppert, stating that it was "simply unable to agree that Mr. Blackburn should be accorded 'insured' status under the policy in question." That same month, F D filed another similar declaratory judgment action in a state court, but it was also dismissed because F D's appeal of the dismissal of its first declaratory judgment action was still pending. The Eleventh Circuit Court of Appeals ultimately affirmed the dismissal of F D's first declaratory judgment action.
In June 1991, one of the lawyers that F D had employed to defend the Dawson action wrote to F D, informing it that the plaintiffs had filed an amendment to their complaint. The letter to F D contained a copy of the proposed amended complaint, and it informed F D of claims now naming Blackburn and his firm as defendants in the action. On July 12, 1991, theDawson complaint was amended to allege that Blackburn had violated fiduciary duties imposed by ERISA.
In February 1992, F D paid the full $1,000,000 policy limit in settlement of the claims against the eight directors for whom F D had provided a defense. On May 16, 1992, F D voluntarily dismissed a third declaratory judgment action that it had refiled in a state court in March 1992 against Blackburn.
On May 20, 1992, Blackburn sued F D in the Morgan County Circuit Court, claiming breach of contract, bad faith failure to defend, and fraudulent suppression. Specifically, he sought an order requiring F D to furnish him, as an insured, with a defense and indemnification as to the claims of breach of fiduciary duty made against him in the underlying actions in both state and federal courts. Blackburn also sought compensatory and punitive damages. F D answered, denying liability, and filed a counterclaim, seeking an order stating that it owed no duty to defend or indemnify Blackburn.
On October 2, 1993, the trial court entered a summary judgment in favor of F D on *Page 667 
Blackburn's claims of bad faith and fraudulent suppression. The court also entered a summary judgment as to the portion of Blackburn's complaint claiming punitive damages for breach of contract. The court made those judgments final. Blackburn's claim for compensatory damages based on breach of contract remains pending. On October 25, 1993, Blackburn appealed the summary judgment in favor of F D on his claims of bad faith and fraudulent suppression. He did not appeal the summary judgment on his claim for punitive damages based on breach of contract.
 II. Standard of Review
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), A.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
 III. Bad Faith Failure to Provide Insurance Coverage
Blackburn has appealed from the trial court's summary judgment on his claim against F D alleging that it acted in bad faith in refusing to provide him the benefits of a defense to a lawsuit against him, which he says it owed him under the Mutual Savings fiduciary responsibility insurance policy. Blackburn claims that F D acted in bad faith by refusing to provide him a legal defense to the lawsuits that arose from the Roussel buy-out, which F D provided for eight other directors and which he claims he was also entitled to under the policy.
The elements of a claim for bad faith failure to pay an insurance claim have been set out as follows:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."
National Sec. Fire Casualty Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982). The tort of bad faith has been defined as follows:
 "Every contract contains an implied in law covenant of good faith and fair dealing; this covenant provides that neither party will interfere with the rights of the other to receive the benefits of the agreement. [Citations omitted.] Breach of the covenant provides the injured party with a tort action for 'bad faith' notwithstanding that the acts complained of may also constitute a breach of contract. [Citations omitted.]"
Chavers v. National Sec. Fire Casualty Co., 405 So.2d 1, 4
(Ala. 1981) (quoting Childs v. Mississippi Valley Title Ins.Co., 359 So.2d 1146 (Ala. 1978)) (emphasis added.).
As stated above, in the quotation from Chavers, a bad faith claim will lie for a failure to provide the benefits contracted for in an insurance policy. See Chavers v. National Sec. Fire Casualty Co., 405 So.2d 1, 4 (Ala. 1981); Sanford v. WesternLife Ins. Co., 368 So.2d 260, 262 (Ala. 1979); Childs v. *Page 668 Mississippi Valley Title Ins. Co., 359 So.2d 1146, 1152 (Ala. 1978). In Safeco Insurance Co. of America v. Sims,435 So.2d 1219, 1222 (Ala. 1983), this Court stated that a "cause of action for bad faith refusal to honor insurance benefits
accrues upon the event of the bad faith refusal, or upon the knowledge of the facts which would reasonably lead the insured to a discovery of the bad faith refusal." Furthermore, inVincent v. Blue Cross-Blue Shield of Alabama, 373 So.2d 1054,1062 (Ala. 1979), Justice Jones, in his special concurrence, noted that "for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of [a lack of] a reasonable basis for a denial. . . ." (Citation omitted.)
In this case, the benefits of F D's policy expressly included both a defense and indemnify as to claims involving allegations of a "breach of fiduciary duty" made against an "insured" during the policy period. We have previously noted that "[a]n insurer's duty to defend can be more extensive than its duty to pay." Universal Underwriters Ins. Co. v.Youngblood, 549 So.2d 76, 78 (Ala. 1989). The insurer's duty to defend is determined by the allegations of the complaint against the insured, whether true or groundless, and if there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured. United States Fidelity Guar. Co. v.Armstrong, 479 So.2d 1164 (Ala. 1985); Ladner Co. v. SouthernGuar. Ins. Co., 347 So.2d 100, 102 (Ala. 1977); Pacific Indem.Co. v. Run-A-Ford Co., 276 Ala. 311, 161 So.2d 789 (1964);Universal Underwriters Ins. Co. v. Stokes Chevrolet Inc.,990 F.2d 598 (11th Cir. 1993); Perkins v. Hartford Ins. Group,932 F.2d 1392 (11th Cir. 1991).
In bad faith cases involving an insurer's refusal to pay an insurance claim, this Court has established the "directed verdict on the contract claim" standard. In National SavingsLife Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982), we stated:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim, and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
However, in Thomas v. Principal Financial Group,566 So.2d 735 (Ala. 1990), we noted that the "directed verdict on the contract claim" test was not applicable to decide every bad faith claim. Citing Continental Assurance Co. v. Kountz,461 So.2d 802 (Ala. 1984), and Gulf Atlantic Life Ins. Co. v.Barnes, 405 So.2d 916 (Ala. 1981), we held that even if an insured was not entitled to a directed verdict on the contract claim, the bad faith claim could be submitted to the jury if "the insurer either intentionally or recklessly failed to properly investigate the claim or subject the results of the investigation to a cognitive evaluation and review." Thomas, supra, at 744. This test is particularly appropriate in the context of a bad-faith-failure-to-defend case, because an insurer is under a greater duty to defend the insured than to indemnify. Youngblood, supra; Armstrong, supra. Thus, the issue before this Court is whether Blackburn presented substantial evidence that F D failed to properly investigate Blackburn's claim for a defense to the Roussel buy-out lawsuits and failed to subject the results of that investigation to a fair review, resulting in a bad faith failure to defend.
 A.
Although one of F D's claims workers testified by deposition that F D had not actually denied Blackburn's claim for a defense, but had only not afforded it to him, its failure to provide Blackburn's defense for more than four years after F D received notice of the first of the Roussel buy-out lawsuits amounts to a constructive denial of its duty to defend. On appeal, F D lists *Page 669 
several reasons why it refused to provide a defense to Blackburn, even though it was providing a defense to the same lawsuits for the other Mutual Savings directors. In summary, these reasons are as follows: (1) Blackburn was not an "insured" under the policy when the actions alleged in theHutson and Dawson complaints occurred; (2) the original Dawson
complaint filed during the policy period and count IV of theHutson complaint, which alleged a breach of fiduciary duty, did not name Blackburn as a defendant, so no covered claim was made against him during the policy period; (3) the claims arise from Blackburn's actions performed in his capacity as an attorney for Mutual Savings and not in his capacity as a director of Mutual Savings; (4) the F D policy is an "excess" policy that does not apply where Blackburn had other valid insurance (i.e., professional liability insurance); (5) Blackburn's alleged actions fall within several exceptions to coverage found in the policy; and (6) F D filed a declaratory judgment action against Blackburn to determine whether it owed him a legal defense.
Most of these arguments relate directly to the interpretation F D gives to the language of its "Pension and Welfare Fund Fiduciary Responsibility Insurance Policy" at issue in this case. Of course, ambiguities in the language of an insurance policy are construed in favor of the insured, rather than the insurer. Scottsdale Ins. Co. v. Town of Orange Beach,618 So.2d 1323 (Ala. 1993); St. Paul Fire Marine Ins. Co. v. EdgeMemorial Hosp., 584 So.2d 1316 (Ala. 1991); Sullivan v. StateFarm Mut. Auto. Ins. Co., 513 So.2d 992 (Ala. 1987). Although an insurance company is entitled to write a policy with narrow limits of liability, to do so it must use precise language.Garrett v. Alfa Mut. Ins. Co., 584 So.2d 1327 (Ala. 1991). Any exceptions from coverage present in an insurance policy are construed narrowly, so as to provide the maximum coverage for the insured. Alliance Ins. Co. v. Reynolds, 494 So.2d 609 (Ala. 1986); Employers Ins. Co. of Alabama, Inc. v. Jeff Gin Co.,378 So.2d 693 (Ala. 1979).
Thus, we apply these rules of construction to the provisions of the policy used by F D as a basis for refusing to defend Blackburn, in order to determine whether F D reasonably interpreted its own policy language. As the Supreme Court of Arizona has noted, an insurer's subjective belief that a portion of its insurance contract precludes coverage is not an absolute defense to a bad faith claim. Sparks v. Republic Nat'lLife Ins. Co., 132 Ariz. 529, 647 P.2d 1127 (1982), cert.denied., 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). "If the insurer's interpretation of its own contract as excluding coverage could render an insured's claim 'fairly debatable,' then insurers would be encouraged to write ambiguous insurance contracts, secure in the knowledge that an obscure portion of the policy would provide an absolute defense to a claim of bad faith." Sparks, 132 Ariz. at 539,647 P.2d at 1137.
 B.
F D admits that Blackburn became an "insured" under its fiduciary responsibility insurance policy on October 12, 1988, when he became a member of the Mutual Savings board of directors. It argues, however, that Blackburn is not covered under the policy because the lawsuits naming Blackburn as a defendant relate to alleged actions that occurred before he became a director, i.e., before he became an "insured."
The critical policy language regarding this argument states: "The Company will pay on behalf of the Insured (as herein defined) all sums which the Insured shall become legally obligated to pay as damages due to any claim made during thepolicy period against the insured. . . ." (Emphasis added.) This is a "claims-made" insurance policy, which means the policy contains no language limiting coverage to claims based on actions that allegedly occurred only during that portion of the policy period where the defendant had attained "insured" status. Rather, a more reasonable interpretation of the insuring clause indicates that its focus is not on when the actions giving rise to the lawsuit allegedly occurred, but solely on whether the claim was filed during the policy period. Because the language of the insuring clause does not clearly limit the policy's coverage to F D's *Page 670 
own narrow interpretation, it cannot be construed to deny Blackburn coverage.
 C.
F D argues that no claims alleging a "breach of fiduciary duty" were made against Blackburn during the May 31, 1988, to May 31, 1989, policy period. F D notes that the January 16, 1989, Dawson lawsuits, which alleged ERISA violations, did not
name Blackburn as a defendant. Further, F D argues that the complaint relates solely to actions allegedly taken by Blackburn in his capacity as legal counsel to Mutual Savings. It admits, however, that the July 12, 1991, amendment to theDawson complaint alleged that Blackburn violated fiduciary duties imposed by ERISA.
Critically, section 5(b) of the policy states:
 "Claims based on or arising out of the same act, interrelated acts or one or more series of similar acts of one or more of the Insured shall be considered a single claim which, for the purpose of this policy, shall be deemed to have been made at the time the first of such claims is made against any Insured."
Thus, under the policy, the Dawson amendment, which clearly alleged that Blackburn had breached a fiduciary duty imposed by ERISA, was a valid claim made during the policy period. Because of modem pleading practices, which allow the liberal amendment of complaints, "the initial determination of coverage is not binding." Tapscott v. Allstate Ins. Co., 526 So.2d 570, 574
(Ala. 1988). If a complaint that did not allege acts covered by an insurance policy is amended to add allegations of actions that are covered under the policy, the insurer's duty to defend is then activated. Tapscott, 526 So.2d at 574. Moreover, if a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy. Tapscott, supra. Thus, even though one of F D claims workers was informed of the amendedDawson complaint by retained defense counsel, both of F D's claims workers who handled Blackburn's demand for coverage testified by deposition that they were never aware of, and had not previously seen, the Dawson amended complaint.
Further, because of the F D policy's "relation-back" clause noted above, the October 11, 1990, Mutual Savings complaint constitutes a claim made against Blackburn during the policy period. In addition to alleging legal malpractice, the complaint alleged that Blackburn had breached fiduciary duties imposed by both ERISA and state law.
Thus, by the terms of its own policy, and contrary to F D's continuing refusal to provide a defense, the claims alleging "breaches of fiduciary duty" by Blackburn were made during the policy period.
 D.
F D also argues that its fiduciary responsibility insurance policy is an "excess" policy, providing coverage only after the insured's other valid and collectable policies reached coverage limits. It argues that all of Blackburn's actions relevant to the Roussel buy-out lawsuits relate to his position as legal counsel to Mutual Savings and points out that the Blackburn firm had a professional liability insurance policy covering Blackburn that provided him a defense to the legal malpractice claims. Thus, F D contends that its policy provides no coverage to Blackburn.
Under Alabama law, "[t]he determination of which insurance coverage is primary and which, if any, is secondary is dependent upon the exact language of each policy." Isler v.Federated Guar. Mut. Ins. Co., 567 So.2d 1264, 1265 (Ala. 1990) (citations omitted). The F D policy states:
 "Other Insurance — This insurance shall be excess insurance over any other valid and collectable insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise. In addition, this policy shall not cover any loss for which the Insured is entitled to indemnity under any other policy in force previous to the effective date of this policy."
However, this Court has noted that the purpose of an "other insurance" clause is to "limit the insurance compan[y's] liability *Page 671 
when a person is insured under two or more policiescovering the same risks." Gaught v. Evans, 361 So.2d 1027, 1028
(Ala. 1978). (Emphasis added.)
A review of the language of F D's fiduciary responsibility policy and the Blackburn firm's professional liability insurance policy reveals that the policies do not cover the same risks. The F D policy covers an insured for a "breach of fiduciary duty" relating to a pension and welfare fund. In contrast, the Blackburn firm's professional liability policy expressly excludes coverage for "wrongful acts in [the] performance . . . as an officer, director, or trustee of a . . . pension, welfare, profit sharing, mutual, or investment fund or trust." Thus, because the complaints, against Blackburn allege actions taken in his role as a director of the Mutual Savings ESOP, there is a question of whether the F D policy is "excess" coverage with regard to all the claims against Blackburn.
Although F D maintains as a defense to Blackburn's bad faith action that its policy only afforded "excess" coverage in relation to Blackburn's professional liability insurance policy, the F D claims workers admitted in deposition testimony that they never actually saw a copy of the very policy they claimed was to provide Blackburn's primary coverage. F D argues on appeal that Blackburn never provided it with a copy of the policy; however, the record reveals that in F D's letters to Schuppert, F D only requested information as to whether Blackburn or the Blackburn firm maintained a professional liability insurance policy and whether a demand for coverage had been made on that insurer. F D presented no evidence that it ever specifically requested a copy of the policy from Blackburn in order to determine the scope of its coverage. F D used the mere knowledge that Blackburn was covered under a professional liability policy as a basis for refusing to provide Blackburn insurance coverage.
 E.
F D argues that it was under no duty to provide a defense to Blackburn in relation to the Roussel buy-out lawsuits because its fiduciary responsibility insurance policy contains several exclusions from coverage that it believes apply to the allegations against Blackburn. One of F D's claims attorneys that handled Blackburn's demand for coverage stated by deposition testimony that F D believed two of the policy's exclusions applied to Blackburn and justified its refusal to provide him a defense. Specifically, the claims attorney noted the exclusions provided for in section 1(a) and 1(c) of the policy. However, on appeal, F D refers only to the exclusion stated in section 1(a) as a basis for its contention that it did not owe Blackburn a duty to defend the Roussel buy-out lawsuits.
These policy exclusions state:
 "The Company shall not be liable to make any payment in connection with any claim made against an Insured:
 "(a) based upon or attributable to the Insured gaining in fact any personal profit or advantage to which such Insured was not legally entitled;
". . . .
 "(c) brought about or contributed to by any dishonest, fraudulent or criminal act or willful or reckless violation of any common or statutory law, but this exclusion shall not apply to any claim upon which suit may be brought by reason of any alleged dishonesty on the part of the Insured unless:
 "(i) a judgment or other final adjudication thereof adverse to such Insured shall establish that acts of active dishonesty committed by such Insured were material to the cause so adjudicated. . . ."
(Emphasis added.)
In response to F D's position that the above exclusions apply to Blackburn's demand for a defense to the Roussel buy-out lawsuits, Blackburn argues that the exclusions apply only to F D's duty to indemnify an insured in relation to certain claims, but not to its duty to defend those same claims. Blackburn points to the exclusionary language itself, which states that "[t]he Company shall not be liable to make any payment." Blackburn argues that "payment" refers to indemnification and not to a duty to defend. He argues that similar provisions in *Page 672 
other policies where the listed exclusions apply to the duty to defend use terms such as "coverage" or "insurance" or "the duty to defend or indemnify."
We noted above that policy exclusions are construed narrowly, so as to provide the maximum coverage for the insured.Reynolds, supra; Jeff Gin Co., supra. F D cites several cases for the proposition that "there is clearly no basis for arguing that a complaint which sets forth claims clearly excluded by the policy cannot serve as a basis for denying coverage in the first instance." Universal Underwriters Ins. Co. v. StokesChevrolet, Inc., 990 F.2d 598 (11th Cir. 1993); LampliterDinner Theater v. Liberty Mut. Ins. Co., 792 F.2d 1036 (11th Cir. 1986); Cincinnati Ins. Co. v. Metropolitan Properties,Inc., 806 F.2d 1541 (11th Cir. 1986); Carter v. Cincinnati Ins.Co., 435 So.2d 42 (Ala. 1983). In these cases, however, the applicable policy language did not differentiate between the duty to pay and the duty to defend, as does F D's policy. Thus, construed in favor of the insured, the exclusionary language in F D's policy would apply only to F D's duty to indemnify the insured, not to the duty to defend. Moreover, F 
D admits that the language of exclusion 1(c) requiring an adjudication of guilt relates only to its duty to indemnify and not the duty to defend.
On appeal, F D relies heavily on exclusion 1(a), relating to claims that the insured gained "any personal profit or advantage to which such Insured was not legally entitled." F 
D states that the Hutson complaints made allegations against Blackburn that involve fraud and self-dealing and that exclusion 1(a) clearly excludes coverage for such claims. Even so, this Court has held that if a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy. Tapscott, supra. In this case, the complaints at issue made several allegations against Blackburn that would not fall within the exclusion relied on by F D in refusing Blackburn a defense. Thus, even if the policy exclusions are read broadly to include the duty to defend, as well as to indemnify, F D would still be under a duty to defend such allegations that did not fall within exclusion 1(a).
 F.
F D argues that it is not liable for bad faith because it filed several declaratory judgment actions seeking a judicial determination of whether it was required to provide insurance coverage to Blackburn. In fact, an internal F D memorandum indicates that F D filed the September 20, 1989, declaratory judgment action after it had made the decision not to provide Blackburn with a defense to the Hutson lawsuit, specifically to "head off any possibility of bad faith actions."
This Court has stated previously that the finding of a justiciable controversy in a declaratory judgment action would not bar a bad faith claim. Morton v. Allstate Ins. Co.,486 So.2d 1263 (Ala. 1986); Safeco Ins. Co. of America v. Sims,435 So.2d 1219 (Ala. 1983). "The standard for testing a bad faith claim is not found in either the adjudication of a justiciable controversy or the judgment on the merits of the contract claim. . . . [W]hether there is a bad faith claim will be determined by the facts and circumstances of each case." Sims, 435 So.2d at 1223. F D's filing of several declaratory judgment actions, all of which were dismissed, is only a part of the total facts and circumstances of this case.
 G.
Blackburn argues that the fact that F D entered into a settlement on behalf of the eight other directors for whom it had provided a defense, but did not include Blackburn in the settlement, is further evidence of bad faith on the part of F D. F D settled the claims against other directors by paying its $1 million policy limit. Evidence in the record suggests that F D sought to include Blackburn in the settlement, but that the plaintiffs refused to include Blackburn, and that F 
D completed the settlement in order to bring an end to its ongoing expense even though its policy states that "[t]he Company shall not settle a claim without the written consent of the Insured." *Page 673 
In Samply v. Integrity Ins. Co., 476 So.2d 79 (Ala. 1985), we held that "an insurer's duty to defend is not discharged by paying the policy limits." Thus, by itself, F D's settlement of the claims against the other directors did not foreclose any duty it may have had to defend Blackburn against those same claims. Moreover, given the F D policy language, the settlement made with knowledge of Blackburn's objection may be evidence of bad faith.
 H.
We conclude that F D's refusal to provide Blackburn with a defense to the claims arising from the Roussel buy-out was based either on its subjective interpretation of policy provisions that are ambiguous and must be interpreted in favor of the insured or on unambiguous policy provisions, such as the 'relation-back' clause, that it ignored. Further, there is evidence that F D decided to deny Blackburn's demand for a defense without certain critical information and that it ignored other information as it became available.
Construing the evidence in favor of Blackburn, the nonmovant, we hold that Blackburn presented substantial evidence from which a jury could find that F D acted in bad faith by "intentionally or recklessly fail[ing] to properly investigate [Blackburn's] claim or subject the results of the investigation to a cognitive evaluation and review." Thomas, supra, at 744. Thus, the summary judgment entered in favor of F D on Blackburn's claim alleging bad faith refusal to provide insurance benefits must be reversed and the cause remanded to the circuit court.
 IV. Fraudulent Suppression
In Soniat v. Johnson-Rast Hays, 626 So.2d 1256 (Ala. 1993), this Court noted the elements of a claim for fraudulently suppressing or concealing a material fact. We stated:
 "In order to establish fraudulent concealment, a plaintiff must show (1) that the defendant had a duty to disclose a material fact; (2) that the defendant either failed to disclose or concealed that material fact; (3) that the defendant's failure to disclose or his concealment of that material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered damage as a result of his action, or inaction, induced by the defendant's failure to disclose or his concealment of the material fact."
626 So.2d at 1258-59.
Blackburn's claim alleging fraudulent suppression rests on his contention that F D suppressed the fact that it had denied or would deny his claim for a defense to the Roussel buy-out lawsuits. He asserts that F D had a duty to inform him of its decision and that it failed to communicate that decision to him, even while it continued to state that the evaluation of his claim was continuing. He contends that, as a result, he spent hundreds of thousands of dollars to pay for his own legal defense. He further argues that F D's failure to inform him that it had denied his claim induced him to delay the claim against it for bad faith, which he has now filed.
However, the declaratory judgment actions filed by F D clearly expressed that it was seeking a judicial declaration that it owed no duty to Blackburn. Further, although F D wrote letters to Schuppert indicating that the evaluation of Blackburn's claim was continuing, the letters also indicated that it appeared to F D that Blackburn was not covered under the policy. The record indicates that F D did inform Blackburn that it would not furnish him a defense, even though it indicated that it would continue to evaluate his claim for coverage. Thus, even construing the evidence in favor of Blackburn, we conclude that he failed to present substantial evidence that F D suppressed the fact that it would not provide him a legal defense. Accordingly, the summary Judgment for F D on the fraudulent suppression claims must be affirmed.
AFFIRMED IN PART; REVERSED IN PART; REVERSED IN PART AND REMANDED.
MADDOX, ALMON, SHORES, HOUSTON, COOK, and BUTTS, JJ., concur. *Page 674