738 So.2d 815 (1999)
ALFA MUTUAL FIRE INSURANCE COMPANY and Earl Ledbetter, Jr.
v.
Ada Mable THOMAS.
Ada Mable Thomas
v.
Alfa Mutual Fire Insurance Company and Earl Ledbetter, Jr.
1970389 and 1970390.
Supreme Court of Alabama.
April 16, 1999.
Rehearing Denied June 11, 1999.
*817 Philip S. Gidiere, Jr., and Steven K. Herndon of Gidiere & Hinton, Montgomery, for appellants/cross appellees Alfa Mutual Fire Insurance Company and Earl Ledbetter, Jr.
Frank M. Wilson of Beasley, Wilson, Allen, Crow & Methvin, P.C., Montgomery; and Wesley Romine and Roger S. Morrow of Morrow, Romine & Pearson, P.C., Montgomery, for appellee/cross appellant Ada Mable Thomas.
PER CURIAM.
Ada Mable Thomas sued Alfa Mutual Fire Insurance Company ("Alfa") and one of its agents, Earl Ledbetter, Jr., alleging fraud, fraudulent suppression, breach of contract, and bad-faith failure to pay an insurance claim. Thomas's claims are based on alleged misrepresentations by Ledbetter that Alfa was providing Thomas with a "full-coverage" property-insurance policy and on Alfa's alleged failure to pay Thomas on an insurance claim arising from Hurricane Opal. The jury awarded Thomas $10,000 in compensatory damages and $325,000 in punitive damages on the fraud and suppression claims; $5,000 in compensatory damages for breach of contract; and $10,000 in compensatory damages and $50,000 in punitive damages on the bad-faith claim. The court entered a judgment accordingly. The circuit court granted Alfa's motion for a JNOV on the bad-faith claim, and denied Alfa's motions for a JNOV, a new trial, or a remittitur of the punitive-damages award on the fraud and suppression claims. The parties appeal.[1]

I. Facts
Most of the material facts in this case are undisputed. In any event, the jury returned verdicts for the plaintiff, so we view the evidence in a light most favorable *818 to her. E.g., Hill Air of Gadsden, Inc. v. Marshall, 526 So.2d 15, 17 (Ala.1988).
The evidence, viewed in the light most favorable to the plaintiff, suggests the following facts. Ada Thomas, a barely literate widow in her 70s, telephoned Alfa to inquire about obtaining insurance on her home. Alfa responded by sending its local agent, Earl Ledbetter, to see her. Mrs. Thomas had known Ledbetter for eight years because Ledbetter, while working for a different insurance company, had sold and serviced a property-insurance policy on the Thomas home while Mr. Thomas was living. Because of this prior relationship, Mrs. Thomas believed she could trust Ledbetter.
Mr. Ledbetter met with Mrs. Thomas at her home on February 10, 1994. Annie Thomas, the plaintiff's daughter, lived with her mother and was present at the meeting. Mrs. Thomas told Ledbetter, "I want some coverage on my house; I want everything. I want full coverage." According to Mrs. Thomas's testimony, Ledbetter responded by saying, "Yes ma'am, I'm going to do you right, Mrs. Ada. So that is what I'm going to give you is full coverage.... That's what I'm here for, to give you everything, to give you what you want." Mr. Ledbetter then reviewed a list of items that would be covered under the new policy, including wind damage. Mrs. Thomas agreed to buy the policy and paid the first premium in cash.
Earl Ledbetter did not tell Mrs. Thomas that, because the Thomas house was a prefabricated house and was not affixed to a permanent foundation, Alfa's underwriters would not issue a full-coverage homeowner's policy, but instead would issue a policy that gave only minimal coverage, known as a "standard fire insurance policy." The policy was renewable every six months.
In June 1994, four months after Mrs. Thomas had purchased the policy, her new water heater burst, causing damage to the house and to personal property. Annie Thomas telephoned Alfa to make a claim for her mother, but she was told that the policy purchased by her mother did not cover damage caused by the water heater. Annie read through the insurance-policy booklet Alfa had provided and found in it a paragraph stating that the kind of damage her mother had incurred from the water heater was covered. What neither Alfa nor Ledbetter had explained to the Thomases was that the policy booklet actually described four different Alfa insurance policies and that an insured had to refer to the policy's declarations page to determine which kind of policy the insured had purchased and which provision in the policy booklet actually applied. Not understanding this, Annie Thomas assumed that damage from the water heater was covered, when, in fact, such coverage was available only in higher grades of property insurance.
In any event, the plaintiff and her daughter thought there was coverage and thought Alfa should have paid the claim. Even though Mrs. Thomas was quite angry and upset because Alfa did not pay, she did not cancel her policy because, she said, she did not want to "put up a fight" with Alfa. Instead, the Thomases turned to the manufacturer of the water heater, which reimbursed them for all but $500 for the water damage. Even though Mrs. Thomas thought she had "full coverage" and thought Alfa had wrongfully denied her claim, she continued to renew the policy and to pay a premium every six months.
On October 5, 1995, Hurricane Opal hit southeast Alabama. The wind from the hurricane blew an outbuilding in Mrs. Thomas's yard off of its foundation, damaged a satellite dish, and damaged the roof, the siding, and the television antenna on her house. In addition, the power outage resulting from the hurricane caused spoilage of food in a freezer. Mrs. Thomas again made a claim with Alfa. Alfa sent Ledbetter and an adjuster to the Thomas residence, but no one with Alfa told Mrs. Thomas an adjuster was coming. The evidence *819 was disputed, but the jury could have reasonably believed that Ledbetter and the adjuster stayed at the home for only a few minutes; made no attempt to see if Mrs. Thomas was at home or to discuss with her the reported damage; took some pictures of the residence; did not walk around the entire house; and made no attempt to inspect the roof. A neighbor testified that the damage to the roof, the siding, and the outbuilding was obvious. On October 31, 1995, Alfa denied the insurance claim, stating that Mrs. Thomas had no coverage for that claim. When Annie Thomas, the daughter, was able to talk to Ledbetter, Ledbetter rudely told her that Mrs. Thomas had no coverage because her house was just not up to standards. At trial, Alfa employees testified that the standard fire insurance policy sold to Mrs. Thomas did not cover the satellite dish, the food, or the antenna, but conceded that even under that policy the roof, the siding, and the outbuilding were insured against wind damage.

II. The Fraud and Suppression Claims
The defendants argue that the trial court should have entered a judgment as a matter of law in their favor on the fraud and suppression claims because, they say: (a) the evidence was insufficient to support the jury's verdict, and (b) Mrs. Thomas could not have justifiably relied on Ledbetter's representation.
The elements of a misrepresentation claim are 1) that the representation was false, 2) that it concerned a material fact, 3) that the plaintiff relied on the false representation, and 4) that actual injury resulted from the reliance. § 6-5-101, Ala. Code 1975; Boswell v. Liberty Nat'l Life Ins. Co., 643 So.2d 580, 581 (Ala.1994).
The elements of a suppression claim are 1) that the defendant suppressed a material fact, 2) that the defendant had a duty to communicate that material fact, either because of a confidential relationship between the parties or because of the particular circumstances of the case, and 3) that the plaintiff suffered actual injury as a result of the suppression. § 6-5-102, Ala. Code 1975; Boswell, 643 So.2d at 581.
A jury could reasonably conclude that Ledbetter told Mrs. Thomas she was going to receive "full coverage," that this representation was false, that this representation was material to Mrs. Thomas's decision to purchase the Alfa policy, that at the time of the sale Mrs. Thomas relied on the false representation, and that she was injured, by being induced to purchase a policy that did not provide "full coverage" and then by Alfa's refusing to pay the damage claims arising from the water-heater episode and Hurricane Opal.
Alfa and Ledbetter claim that Mrs. Thomas could not have justifiably relied on the representation regarding "full coverage," because Mrs. Thomas did not read her copy of the policy, which, the defendants say, disclosed just what coverage she had purchased. See Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303, 306 (Ala. 1997).
Whether Mrs. Thomas's reliance on Ledbetter's representation allows the recovery of damages is to be determined under the "justifiable reliance" standard. Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997).[2] Under the justifiable-reliance standard, as stated in Hickox v. Stover, 551 So.2d 259 (Ala.1989),
"`[a] plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have *820 closed his eyes to avoid the discovery of the truth."'"
551 So.2d at 263 (quoting Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1091-92 (Ala.1989) (concurring opinion)).
The evidence presented at trial does not indicate that Mrs. Thomas's reliance on Ledbetter's representation was, as a matter of law, not justifiable. Mrs. Thomas was 74 years old, a widow, and could barely read or write. She had known Earl Ledbetter for many years (Ledbetter had handled Mrs. Thomas's late husband's insurance needs), and she trusted him to provide a full-coverage policy. Ledbetter himself testified that he had a relationship of trust with Mrs. Thomas. Moreover, an Alfa vice president testified that an agent has a higher degree of responsibility to explain a policy when he is dealing with an illiterate person. Whether Mrs. Thomas's reliance on Ledbetter's representation was justified was a question of fact to be resolved by the jury. AT & T Info. Sys., Inc. v. Cobb Pontiac-Cadillac, Inc., 553 So.2d 529, 532 (Ala. 1989).
Our analysis with respect to the suppression claim is similar to that with respect to the fraudulent misrepresentation claim. This Court will not disturb the jury's conclusion that Alfa and Ledbetter suppressed the material facts that the plaintiff's house did not meet Alfa's underwriting requirements for a "full-coverage" policy and that only a limited-coverage policy would be issued to Mrs. Thomas. A jury could reasonably conclude from the substantial evidence that the suppression induced Mrs. Thomas to buy a limited-coverage policy and that her doing so resulted in her having unpaid claims.
Alfa and Ledbetter argue, citing Trio Broadcasters, Inc. v. Ward, 495 So.2d 621 (Ala.1986), that there was no confidential relationship with Mrs. Thomas and that there were no particular circumstances on which a duty to disclose the limited coverage could rest. We disagree. In Trio Broadcasters, this Court concluded that the particular-circumstances exception giving rise to a duty to disclose was not present when both parties were experienced in commercial real estate transactions and were dealing with each other at arm's length through real estate brokers. Id. at 624.
Given the facts in this case, we cannot hold that the particular circumstances surrounding this case were insufficient as a matter of law to create a duty to disclose material facts about the insurance policy. See State Farm Fire & Casualty Co. v. Owen, 729 So.2d 834 (Ala.1998).
Alfa and Ledbetter argue that the circuit court should have granted them a judgment as a matter of law on the fraud and suppression claims because, they say, the denial of the claim based on water-heater damage put her on notice that Ledbetter's representations had been false. Alfa and Ledbetter contend that, after that denial, her continuing to pay premiums constituted a waiver of her fraud cause of action because she could not have acted in reliance on the fraudulent misrepresentation after that time.
However, this argument does not affect the right to recover damages under the fraud and suppression claims based on the lack of coverage for the water-heater claim. Although Alfa and Ledbetter argue at trial that Mrs. Thomas had had notice of the fraud before Hurricane Opal occurred, they did not present to the court any basis for directing a verdict on the fraud claim in its entirety, and they did not request any limiting instructions that would have told the jury it could award damages for fraud only in regard to the water-heater claim, not in regard to the Hurricane Opal claim.
Indeed, at the conclusion of the argument on the directed-verdict motion, the court noted the defendants' argument that Mrs. Thomas could not have relied on the fraud "for Hurricane Opal damages." The court said, however, that this question of damage was "more an argument than a *821 legal something I need to charge on." In other words, the judge said that he would not instruct the jury on this question, but that Alfa and Ledbetter's attorney could argue that any damages awarded for fraud should be based only on the water-heater claim. Alfa and Ledbetter did not object to this ruling and did not argue the damages issue in this way in their closing argument.
The circuit court did not err when it denied Alfa and Ledbetter's motion for a JNOV. We affirm the judgment as it relates to the fraud and suppression counts.

III. Alfa and Ledbetter's Motion for a New Trial
Our discussion above resolves Alfa and Ledbetter's appeal from the order denying their motion for a new trial based on the weight and preponderance of the evidence. The defendants also argue that they did not receive a fair trial because the plaintiff's counsel argued that Alfa was engaged in "institutional systemic fraud." Alfa points to only one page in the trial transcript where the plaintiff's counsel made such a remark, but on that occasion the lawyers were arguing Alfa and Ledbetter's motion for a directed verdict and were outside the presence of the jury. Moreover, the circuit court instructed the jury that the only fraud at issue was the "fraud on the front porch," i.e., the alleged fraud in the sale of the policy. Where a party complains that a new trial is required because of improper argument of counsel, we give the circuit court's order denying a new trial the benefit of presumptive correctness and reverse only if we are able to conclude that substantial prejudice has resulted. Old Southern Life Ins. Co. v. Woodall, 348 So.2d 1377, 1384 (Ala.1977). Alfa and Ledbetter have not met their burden of establishing that any improper comments influenced the verdicts returned by the jury.

IV. Punitive Damages
Alfa and Ledbetter argue that Mrs. Thomas failed to produce the "clear and convincing" evidence required to support an award of punitive damages on the fraud and suppression claims and that the $325,000 punitive damages verdict on those claims is constitutionally excessive.

A. Sufficiency of the Evidence
"`Clear and convincing evidence,' for purposes of punitive damages awards, is `[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.'" Talent Tree Personnel Services, Inc. v. Fleenor, 703 So.2d 917, 923 (Ala.1997) (quoting § 6-11-20(b)(4), Ala.Code 1975). In the context of this case, we must determine whether the jury could have found by clear and convincing evidence that the defendants' conduct amounted to "[a]n intentional misrepresentation, deceit, or concealment of a material fact that the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." § 6-11-20(b)(1), Ala.Code 1975. A "gross" misrepresentation or failure to disclose is defined as one that is inexcusable, flagrant, or shameful. See Talent Tree, 703 So.2d at 924; Ex parte Norwood Hodges Motor Co., 680 So.2d 245, 249 (Ala.1996).
After carefully reviewing the evidence, we conclude that the jury could have reasonably concluded that the defendants' representation that Mrs. Thomas had full coverage and their failure to disclose that Mrs. Thomas could not even qualify for full coverage were shown by clear and convincing evidence to be "gross"; that is, inexcusable, flagrant, or shameful.

B. Excessiveness
This case was tried after the release of BMW v. Gore, 701 So.2d 507 (Ala. *822 1997). Mrs. Thomas introduced evidence indicating she had suffered mental anguish as a result of the defendants' actions. The jury awarded her $10,000 in compensatory damages on her fraud and suppression claims. The maximum amount of actual damage she had incurred in regard to her Hurricane Opal claim was $1,347.92, and the maximum amount of actual damage she had incurred in regard to her water-heater claim was $1,150. Therefore, we must conclude that of the jury's $10,000 compensatory-damages award $7,502.08 was to compensate for mental anguish.
We have reviewed the $325,000 punitive-damages award on the fraud and suppression claims, under the guidelines of this Court's BMW v. Gore case, supra; BMW v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); and we are persuaded that the punitive-damages award on Mrs. Thomas's fraud and suppression claims is excessive to the extent it exceeds $40,000.

V. The Bad-Faith Failure-to-Pay Claim
The circuit court submitted to the jury the plaintiff's bad-faith claim with respect to Alfa's failure to pay Thomas's claim arising from Hurricane Opal. On that claim, the jury returned a verdict against Alfa, finding Alfa liable for $10,000 in compensatory damages and $50,000 in punitive damages, and the trial court entered a judgment on that verdict. However, on Alfa's post-trial motion, the circuit court vacated its previous judgment with respect to the bad-faith claim and entered a judgment as a matter of law for Alfa on that claim. Mrs. Thomas appeals from that aspect of the judgment.
The elements of a claim for bad-faith failure to pay an insurance claim are 1) an insurance contract between the parties and a breach thereof by the defendant, 2) an intentional refusal to pay the insured's claim, 3) the absence of any reasonably legitimate or arguable reason for that refusal, 4) the insurer's actual knowledge of the absence of any legitimate or arguable reason. Blackburn v. Fidelity & Deposit Co. of Maryland, 667 So.2d 661, 667-68 (Ala.1995); National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982). In addition, a plaintiff may satisfy her burden by proving that the insurer intentionally or recklessly failed to determine whether it had a legitimate or arguable reason to refuse to pay the claim. Id.
The plaintiff's contract claim is an important part of her bad-faith claim. In the "normal" case, a plaintiff's bad-faith claim may not be submitted to the jury unless she shows that she is entitled to a directed verdict on the contract claim. Blackburn, 667 So.2d at 668; National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala.1982).
Alfa argues that the JNOV on Mrs. Thomas's bad-faith claim should be affirmed because, it says, Mrs. Thomas did not meet the directed-verdict test. We disagree. It is undisputed that there was an insurance contract and that the contract was breached. Alfa employees testified in Mrs. Thomas's case-in-chief that the standard fire insurance policy sold to Mrs. Thomas covered most of the wind-damage claims that arose from Hurricane Opal. Alfa has not appealed from that portion of the judgment that reflects the jury's finding that Alfa breached its agreement with Mrs. Thomas. Based on the testimony offered in the plaintiff's case, Mrs. Thomas would have been entitled to a directed verdict on the contract claim. Therefore, the circuit court correctly submitted the bad-faith claim to the jury.
Alfa also argues that the circuit court's JNOV on the bad-faith claim should be affirmed because, Alfa says, it had an arguable basis for denying coverage, that is, that when Ledbetter and Alfa's adjuster investigated Mrs. Thomas's claim, they found no damage. See Chastain *823 v. Baldwin Mut. Ins. Co., 495 So.2d 684 (Ala.Civ.App.1986). Mrs. Thomas responds by claiming that the investigation conducted by Alfa was such a poor one that it amounted to an intentional failure by Alfa to determine whether her claim was valid. Blackburn, 667 So.2d at 661. Mrs. Thomas presented substantial evidence to the jury indicating that Ledbetter and the adjuster spent just a few minutes making a cursory inspection and that the wind damage to the home, damage Ledbetter and the adjuster said they did not see, was significant and noticeable.[3] Moreover, the plaintiff presented evidence indicating that when Annie Thomas questioned Alfa's failure to pay, Mr. Ledbetter rudely told her that her mother had no coverage for the wind damage because her mother's house was not up to standards. We think the jury reasonably could have inferred that Alfa just did not want to be bothered by a claim on a "substandard" dwelling.
In reviewing the circuit court's entry of the judgment as a matter of law, we look to see "whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution." Liberty Nat'l Life Ins. Co. v. Allen, 699 So.2d 138, 140-41 (Ala.1997). "`[W]hether there is a bad faith claim will be determined by the facts and circumstances of each case.'" Blackburn, 667 So.2d at 672 (quoting Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1223 (Ala.1983)). Viewing the evidence in a light most favorable to Mrs. Thomas, the jury could have reasonably concluded that Alfa had no reasonably legitimate or arguable reason for denying her claim. Therefore, the circuit court erred when it entered the judgment as a matter of law on the bad-faith claim. We are of the opinion that $15,000 is the compensatory-damages award against which to measure reasonableness in the event the punitive-damages award ($50,000) is challenged as being excessive.

VI. Summary
In summary, we reverse the judgment of the circuit court as it relates to the bad-faith-failure-to-pay claim, and as to that claim we reinstate the jury's verdict finding liability and awarding $10,000 in compensatory damages and $50,000 in punitive damages.
As to the fraud and suppression claims, we affirm the circuit court's denial of the defendants' motions for a judgment as a matter of law. As to those claims, we also affirm the trial court's denial of the motion for a new trial, conditioned on the plaintiff's filing a remittitur of all punitive damages on those claims in excess of $40,000. If the plaintiff does not file such a remittitur with this Court within 30 days from the date of the release of this opinion, the judgment on those claims will be reversed and a new trial ordered.
AFFIRMED IN PART; AFFIRMED CONDITIONALLY IN PART; REVERSED IN PART AND VERDICT REINSTATED; AND CASE REMANDED.
HOOPER, C.J., and HOUSTON, KENNEDY, COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.
SEE, J., concurs in the result.
MADDOX, J., recuses himself.
JOHNSTONE, Justice (concurring).
The parties and the trial court should understand that the opinion of this Court *824 leaves intact the $5,000 recovery of compensatory damages for the contract claim and the $10,000 recovery of compensatory damages for the fraud and suppression claims in addition to the recoveries summarized in Part VI ("Summary") of the opinion.
NOTES
[1] Alfa does not appeal the judgment as it relates to the breach-of-contract claim.
[2] In Foremost, this Court prospectively replaced the "justifiable reliance" standard with the "reasonable reliance" standard. The new standard applies only to cases filed after March 14, 1997. Foremost, 693 So.2d at 421. Mrs. Thomas filed this action on February 6, 1996.
[3] Alfa's reliance on Chastain v. Baldwin Mut. Ins. Co., 495 So.2d 684 (Ala.Civ.App.1986), is misplaced. In Chastain, the Court of Civil Appeals affirmed a directed verdict against the plaintiff's bad-faith claim. There, the insureds made a claim for wind damage to their mobile home. The adjuster spent 30-45 minutes inspecting the mobile home, including climbing on top of it to inspect the roof. When the adjuster found no wind damage, he made a survey of the surrounding area to look for evidence of damaging winds. Finding none, he denied the claim. The trial court in Chastain found that the insurer had an arguable reason for denying the claim and directed a verdict on the bad-faith claim.