COBB, Chief Justice
(concurring in the result).
To the extent that the main opinion relies on Hunt Petroleum Corp. v. State, 901 So.2d 1 (Ala.2004), I cannot concur in its rationale, because I believe that Hunt unduly restricts the jury’s consideration of reliance issues in fraud cases. The application of Hunt to the facts of this case is as wrong in this case as it was in Exxon Mobil Corp. v. Alabama Department of Natural Resources, 986 So.2d 1093 (Ala. 2007), in which I dissented. I discussed my concerns in this respect at length in my dissent in Exxon. However, unlike the situation in Exxon, I believe that'the facts of this case fail to raise an issue of fact for the jury with respect to the issue of reliance. In addition to the fact that the wholesale acquisition cost (“WAC”) is statutorily defined as a cost not including various discounts, see 42 U.S.C. § 1395w-3a(c)(6)(B) and 42 U.S.C. § 1396r-8(b)(3)(A)(iii)(II), the record contains compelling evidence indicating that the State was aware that neither the average wholesale price (“AWP”) nor the WAC were actual costs. For example, in discussing her February 26, 1992, letter to the CMS, AMA Commissioner Carol Herrmann testified as follows:
“Q. [MR. CHRISTIAN, defense counsel:] And this is — this is dated February 26th, 1992, the letter is?
“A. Yes.
“Q. All right. Could you — and this says, ‘However, a number of studies have shown that in recent years, the drug marketplace has changed, and there is a preponderance of evidence that demonstrates that such AWP levels overstate the prices that pharmacists actually pay for a drug product by as much as 10 to 20 percent because they do not reflect discounts, premiums, special offers, or incentives.’ And then they say, ‘Don’t do that,’ in effect, right?
“MR. O’REAR [State’s counsel]: Objection. That’s overbroad.
“MR. CHRISTIAN: I’ll go ahead and read it.
“Q. ‘Consequently, absent valid documentation to the contrary, a published AWP level as a state determination of EAC [estimated acquisition cost] without a significant discount being applied is not an acceptable estimate of prices generally and currently paid by the providers.’ Is that exactly what it says? “A. That’s exactly what it says.
“Q. And this would be important information for you to know, would it not? “A. Yes.
“Q. So at least on February the 26th, 1992, you knew that — about all of these studies that have been made that told you that these — that this AWP overstated the price by about as much as 10 to 20 percent?
“A. We knew that CMS believed that there was a preponderance of evidence. Our AWP had already reflected a 10 percent reduction. And again, it gets to guesstimating by how much they’re overestimating their AWP instead of re-pouting an accurate price to begin with.”
(Emphasis added.) Similarly, when Commissioner Herrmann testified as to a March 1987 memorandum she had received from the Center for Medicaid and Medicare Services (“CMS”), she stated: “States were instructed through [CMS] Regional Offices to obtain better estimations of acquisition costs on single-source drugs. Most states were using average *35 wholesale price, AWP, listings which are usually about 20 percent higher than acquisition cost.” (Emphasis added.)
Thus, I conclude that the State failed to meet its burden of showing that it reasonably relied on the AWP and WAC as actual costs, and the drug manufacturers— AstraZeneca, GSK, and Novartis — -would therefore be entitled to judgments as a matter of law under a more appropriate legal analysis than the analysis in Hunt. See, e.g., Ex parte Alabama Farmers Coop., Inc., 911 So.2d 696 (Ala.2004); Alfa Mut. Fire Ins. Co. v. Thomas, 738 So.2d 815 (Ala.1999); and AT & T Info. Sys., Inc. v. Cobb Pontiac-Cadillac, Inc., 553 So.2d 529, 532 (Ala.1989). Accordingly, I concur in the result.